M.C. VINSON, Larry C. Brooks, Winfree L. Brown, and D–Bar Ranch & Livestock, Ltd., Appellants,

v.

TEXAS COMMERCE BANK–HOUSTON, NATIONAL ASSOCIATION, Texas Commerce Bank–Midland, National Association, and Texas Commerce Bank–Dallas, National Association, Appellees.

No. 05–93–01549–CV.

Court of Appeals of Texas, Dallas.

June 27, 1994.

Barbara Lowe, Berger & Montague, P.C., Philadelphia, PA, Richard D. Davis, Midland, for appellants.

Lawrence L. Bellatti, Andrews & Kurth, L.L.P., Houston, for appellees.

Before THOMAS, ROSENBERG and BARBER, JJ.

**OPINION**

ROSENBERG, Justice.

This is an interlocutory appeal from an order refusing to certify a class action under rule 42 of the Texas Rules of Civil Procedure. *See* TEX.R.CIV.P. 42. Appellants M.C. Vinson, Larry C. Brooks, Winfree L. Brown, and D–Bar Ranch and Livestock, Ltd. complain that the trial court abused its discretion in (i) denying certification to the plaintiff-class and (ii) denying their request for findings of fact and conclusions of law. We overrule appellants' points of error and affirm the trial court's order.

On March 15, 1990, Carl F. Lawrence & Associates, Inc. (CFL), an oil and gas operator, borrowed $15.775 million from Texas Commerce banks in Midland and Houston. Within six months, CFL defaulted. On September 28, 1990, Texas Commerce and CFL executed an amendment to the March 15 loan agreement to handle the delinquency. This amendment directed purchasers of hydrocarbons from CFL properties to forward their payments to a lock box account at a Texas

Commerce Bank in Dallas. Once Texas Commerce verified the payments, it transferred the funds to a restricted access account enabling Texas Commerce to directly withdraw loan payments from CFL's revenues before turning them over to CFL. According to the agreement, Texas Commerce would release to CFL only the balance remaining after Texas Commerce's withdrawals. However, CFL owned only sixty-three percent of the net revenue interest in its properties. The remainder was working interests, royalty interests, and overriding royalty interests held by other corporations, businesses, and individuals. Eventually, CFL filed for bankruptcy on May 29, 1992.

Appellants brought this lawsuit against the three Texas Commerce Banks (Banks), alleging conversion of funds, tortious interference with contractual obligations, breach of fiduciary duties of good faith and fair dealing, and fraud. The named plaintiffs asserted a class-action suit as the representatives of all owners of overriding royalty interests in CFL's revenue. Appellants sought class certification under rule 42(b)(1)(B) or 42(b)(4) of the rules of civil procedure.

At the certification hearing, appellants proposed a class of overriding royalty interest owners (override owners) entitled to proceeds from CFL's oil and gas well production. Appellants alleged that the Banks took possession of the revenue funds without differentiating between proceeds owned by CFL and those due to other revenue interest owners. Appellants complain that the Banks (i) knew that the override owners had prior, perfected security interests in the proceeds from production;[1] (ii) exercised exclusive control over the proceeds belonging to the named plaintiffs and other override owners; and (iii) knowingly used such proceeds to repay debts owed by CFL.

Appellants alleged that all CFL revenue passed through the restricted account. The Banks asserted that during the existence of this account, the purchasers of CFL's hydrocarbons deposited a total of $12.7 million, and the Banks withdrew $5.7 million to make payment on their loans to CFL. According to the Banks, approximately $7 million was turned over to CFL's operations account. The Banks also alleged that another $16 million did not pass through the restricted account but was deposited directly into CFL's operations account. The Banks claimed that an additional $5 million was deposited into CFL's Bank One account without passing through the restricted account.

Nevertheless, appellants claimed that the Banks did not earmark or designate funds received into the restricted account to accommodate the interests of other parties who had an interest in CFL's revenue. Appellants further stated that no override owner consented to the restricted-account arrangement. Based on CFL's internal records, appellants approximated the class at 370 override owners who reside inside and outside of Texas. The Banks claimed that this class definition is improper because it includes all override owners, not just owners who did not receive payments from CFL during the alleged time period. The Banks deposed each named plaintiff.

Winfree Brown alleged that he owned a .00092024 overriding royalty interest in several wells in Crockett County, Texas. Brown alleged that he received no payment from CFL between October 1990 and July 1991. He claimed that he is owed $200 to $300. Brown had the lease and assignment documents but did not know whether the wells in which he had an interest produced in 1990 to 1992 or whether any of his revenue was deposited in the restricted account. He did not know about the restricted-account agreement nor did he demand payment from the Banks.

Larry Brooks alleged that he owned a .00130200 overriding royalty interest in several wells in Irion County, Texas. He received regular payments until October 1991. After that point, Brooks made claims on CFL for missed payments in October and December 1991 and payments due between January and April 1992. In 1992, Brooks and his attorney demanded and collected some of the outstanding amounts due from CFL. Brooks believed that he is owed

---

1. *See* Tex.Bus. & Com.Code Ann. § 9.319 (Tex. UCC)    (Vernon 1991).

$5,331.55. At the time of his deposition, he did not have the lease and assignment documents, but had a division order dated July 14, 1983. Brooks does not know whether the Banks had transferred any of his interest into the restricted account. He neither demanded payment from the Banks nor informed the Banks of his interest.

Morty C. Vinson alleged that he owns a .0225000 overriding royalty interest in certain wells in Crockett County, Texas and another .01968700 overriding royalty interest in other Crockett County wells. CFL paid him $392.12 in 1990 and $39.19 in 1991. He could not recall exactly when he stopped receiving payments from CFL. He believes that he is owed at least $207.86 for production between October 1990 and July 1991. He did not know if the Banks ever received any of his interest into the restricted account.

D–Bar Ranch and Livestock, Ltd. alleged that it owns a .00229500 and a .000862 overriding royalty interests in various wells in Irion County, Texas. It did not know if any of its interest was deposited into the restricted account.

At the close of the hearing, the trial court denied class certification. Although requested by appellants, the trial court did not file findings of fact or conclusions of law.

### CLASS ACTION

In point of error one, appellants contend that the trial court abused its discretion in denying class certification. Appellants assert that they met the prerequisites of rule 42(a) and satisfied rule 42(b) of the rules of civil procedure.

■ In a class action, the complained-of wrong is allegedly committed against a class of individuals, and the judgment in the case binds the entire class, not merely the named parties. *Wente v. Georgia–Pacific Corp.*, 712 S.W.2d 253, 254 (Tex.App.—Austin 1986, no writ). Consequently, the plaintiffs must establish the right to maintain the suit as a class action. *Life Ins. Co. of Southwest v. Brister*, 722 S.W.2d 764, 770 (Tex.App.—Fort Worth 1986, no writ); *see National Gypsum Co. v. Kirbyville Indep. Sch. Dist.*, 770 S.W.2d 621, 627–28 (Tex.App.—Beaumont 1989, writ dism'd w.o.j.). When suit is filed as a class action, the trial court conducts a hearing as soon as practicable to determine whether the suit may be maintained as a class action. Tex.R.Civ.P. 42(c)(1). At the certification hearing, class proponents are not required to make an extensive evidentiary showing in support of a motion for class certification. *Brister*, 722 S.W.2d at 773. The trial court may base its decision on pleadings or other material in the record. *National Gypsum*, 770 S.W.2d at 627.

■ Trial courts enjoy a wide range of discretion in determining whether they should maintain a lawsuit as a class action. *Dresser Indus., Inc. v. Snell*, 847 S.W.2d 367, 371 (Tex.App.—El Paso 1993, no writ). On appeal, review of the trial court's decision is strictly limited to determining whether there has been an abuse of discretion in the grant or denial of the certification order. *Wiggins v. Enserch Exploration, Inc.*, 743 S.W.2d 332, 334 (Tex.App.—Dallas 1987, writ dism'd w.o.j.); *RSR Corp. v. Hayes*, 673 S.W.2d 928, 930 (Tex.App.—Dallas 1984, writ dism'd). The appellate court may not substitute its judgment for that of the trial court. Viewing the evidence in the light most favorable to the trial court's action, we indulge in every presumption that would favor the trial court's ruling. *Parks v. U.S. Home Corp.*, 652 S.W.2d 479, 485 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd).

■ A trial court does not abuse its discretion if it bases its decision on conflicting evidence. *RSR Corp.*, 673 S.W.2d at 930. However, a trial court abuses its discretion when it does not properly apply the law to the undisputed facts. *Wiggins*, 743 S.W.2d at 334; *RSR Corp.*, 673 S.W.2d at 930. The trial court also abuses its discretion when it acts arbitrarily or unreasonably or when it rules based upon factual assertions not supported by material in the record. *See Angeles/Quinoco Sec. Corp. v. Collison*, 841 S.W.2d 511, 513 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Mahoney v. Cupp*, 638 S.W.2d 257, 261 (Tex.App.—Waco 1982, no writ). This Court may reverse a trial court for abuse of discretion only if, after searching the record, it is clear that the trial court's

decision was arbitrary and unreasonable. *See Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex.1987).

■■■■ Appellants argue that judicial policy favoring class-action suits limits the trial court's discretion. Although class actions often conserve judicial resources and promote uniform judgments, there is no right to bring a lawsuit as a class action. The trial court *may* certify a class action if a plaintiff satisfies the prerequisites of rule 42(a) and meets at least one requirement of rule 42(b).[2] Tex.R.Civ.P. 42. However, Texas law does not require a trial court to certify a class action upon a determination that the facts sufficiently satisfy rule 42.[3] As a matter committed to the trial court's discretion, the grant or denial of a class certification is upheld on appeal so long as the court acted rationally in the exercise of its discretion.

Consequently, appellants face a formidable task. Appellants must not only demonstrate that they satisfied all the requirements for certification in rule 42(a) and fell within one of the subsections of rule 42(b), but must also show that the court's refusal to certify was legally unreasonable in light of the facts and circumstances of the case. *See Dresser Indus.*, 847 S.W.2d at 371.

■■■■ Although, as a reviewing court in this case, we examine the entire record only to determine if the trial court's determination is arbitrary and unreasonable, we first recognize that the appellate record reflects that the named plaintiffs could meet the four prerequisites of rule 42(a) and the requirements of rule 42(b)(1)(B) or (b)(4), thereby making class action certification proper. However, even if certification would have been proper, a denial may still not be an abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). For us to find an abuse of discretion, the record would have to show that the trial court acted without reference to

2. Rule 42(a) provides:
   **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
   Tex.R.Civ.P. 42(a).
   Rule 42(b) provides:
   **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
   (1) the prosecution of separate actions by or against individual members of the class would create a risk of
   (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
   (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
   (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

   (3) where the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or
   (4) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
   Tex.R.Civ.P. 42(b).

3. A statute that uses the word "may" is permissive rather than mandatory unless there is something in the statute to show a legislative intent that "may" is mandatory. *See Buttles v. Navarro,* 766 S.W.2d 893, 894 (Tex.App.—San Antonio 1989, no writ). A permissive statute gives a trial court discretion to decide under the framework of the statute. The Texas Legislature used the word "may" in rule 42(a) & (b). Tex.R.Civ.P. 42(a), (b). Nothing in rule 42 shows a legislative intent that "may" is mandatory instead of permissive.

any guiding rules and principles in the denial of class certification. *Downer,* 701 S.W.2d at 241.

Appellants contend that the *undisputed* material facts show that the trial court improperly applied the law to the facts. *See Wiggins,* 743 S.W.2d at 334. The Banks contend that the material facts are hotly disputed; therefore, the trial court based its decision on conflicting evidence. *See RSR Corp.,* 673 S.W.2d at 930. Appellants argue that the facts *material* to certification of a class in this case are undisputed and may be summarized as follows:

> Proposed class members are overriding royalty interest owners in tracts of land covered by leases held or operated by CFL. During the period from November 1990 to May 1991, oil and gas proceeds were diverted into the Banks' restricted control account. The proposed class members did not receive proceeds for CFL production during this time. Neither CFL nor proposed class members had any access to this restricted control account. The Banks acted identically with regard to all the oil and gas proceeds over which they exerted control.

Appellants effectively argue that the prospective class as defined meets rule 42. Specifically, common questions of law can be answered with respect to the Banks' alleged course of conduct.[4] Common issues of law include: (i) the scope of the obligation secured by an override owner's security interest as defined by section 9.319 of the Texas Business and Commerce Code; (ii) the collateral covered by an override owner's section 9.319 security interest; (iii) whether the Banks' seizure of CFL production proceeds violates a section 9.319 security interest; and (iv) whether the Banks' conduct as alleged constituted conversion, breach of fiduciary duty, tortious interference, or fraud.

These questions of law are common to the class, indicating that certification would have been proper. However, to show an abuse of discretion, appellants must demonstrate that the undisputed evidence *negates* any valid rationale by which the trial court could have denied class certification. *See Austin Area Teachers Fed. Credit Union v. First City Bank,* 825 S.W.2d 795, 801 (Tex.App.—Austin 1992, writ denied).

Although the legal theories of liability are common to the class as a whole, questions of fact necessary to prove liability are not. To establish liability on the part of the Banks for the alleged tortious conduct, each individual class member must establish a litany of facts. Appellants urge that the purpose of the court's inquiry into the substantive law issues is to determine whether the character and nature of the case satisfies the requirements of the class action rule; the purpose is not to weigh the substantive merits of each class member's claim. *Klein v. Henry S. Miller Residential Servs., Inc.,* 94 F.R.D. 651, 655 (N.D.Tex.1982); *Brister,* 722 S.W.2d at 772. We agree. Nevertheless, in this case, if appellants prevail as to any one of the common issues of law, the members of the class must do more than prove the amount of their individual claims.

Each individual claimant must establish that (i) he had a lease or assignment that entitles him to revenues generated from certain CFL wells; (ii) the wells in which he had an interest actually generated revenue; (iii) the royalty interest was a prior, perfected security interest; (iv) he was not otherwise paid by CFL; (v) the revenue from the wells went into the restricted account; and (vi) these proceeds of production attributable to his security interest were converted by the Banks to retire CFL's debt.

Because each named plaintiff must prove his entitlement to relief based on facts unique to him, we cannot say the trial court

---

4. Where the defendant is alleged to have engaged in a common course of tortious conduct against the proposed class members, class certification is appropriate. *See, e.g., In re Diasonics Sec. Litig.,* 599 F.Supp. 447, 451 (N.D.Cal.1984); *Beebe v. Pacific Realty Trust,* 99 F.R.D. 60, 65 (D.Or. 1983); *In re Home–Stake Prod. Co. Sec. Litig.,* 76 F.R.D. 351, 369 (N.D.Okla.1977); *Clark v. Cam-eron–Brown Co.,* 72 F.R.D. 48, 59 (M.D.N.C. 1976); *see also RSR Corp.,* 673 S.W.2d at 931–32; *Huddleston v. Western Nat'l Bank,* 577 S.W.2d 778, 780 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.) (corresponding rule 23 of the Federal Rules of Civil Procedure and the decisions interpreting the federal rule are persuasive authority).

abused its discretion in refusing to certify a class action under rule 42(b)(1)(B) or 42(b)(4).[5]

With respect to rule 42(b)(1)(B), adjudication of an individual override owner's claims would not dispose of the interests of other members nor would it necessarily impair another member's ability to protect his own interests. *See* Tex.R.Civ.P. 42(b)(1)(B). Due to common questions of law, the trial court could certify the override owners as a 42(b)(1)(B) class action. However, the trial court did not abuse its discretion in refusing to do so. Common legal theories among class members do not necessitate a 42(b)(1)(B) class action. Although a suit may have precedential value in resolving similar actions, for purposes of rule 42(b)(1)(B), there must be a risk that an adverse determination regarding one override owner *precludes* recovery by another class member. *See* Tex.R.Civ.P. 42(b)(1)(B). Each claim against the Banks is factually unique to each putative class member. Therefore, a final determination with respect to one class member does not prevent another override owner from seeking judicial relief to protect his own interests.

Appellants emphasize that the Banks acted identically with respect to all oil and gas proceeds over which they exercised control; therefore, adjudication with respect to one member would dispose of the interests of the other members. However, each individual class member must establish that the Bank exercised control over his revenue. Although each class member must establish similar facts, one class member's proof of tortious conduct does not establish the Banks' conduct with respect to another member. Notwithstanding common legal claims, adjudication of one owner's claims would not substantially impair another member's ability to bring suit and protect his interests.

With respect to rule 42(b)(4), a class action in the instant case is not necessarily superior to other methods of adjudication. Questions of manageability, litigation expense, and judicial economy are relevant to 42(b)(4) class actions. Tex.R.Civ.P. 42(b)(4); *see Forbush*

*v. J.C. Penny Co.*, 994 F.2d 1101, 1105 (5th Cir.1993). Appellants urge that the key facts are not different for each override owner, and as a result, the individual issues regarding leases and tracing do not predominate over the common issues of law. However, such individual fact issues may render a class action unworkable.

This case involves a great number of parties who owned interests in more than 800 wells where the revenue stream from each well came from a variety of purchasers and may not have all gone to the same destination, the restricted account. The Banks alleged that they used only a part of the revenue in the restricted account to retire CFL debt. The Banks also asserted that as much as $21 million from a variety of purchasers did not pass through the restricted account.

Appellants' case against the Banks is riddled with significant factual considerations. Consequently, the trial court could have found that tracing issues for each individual plaintiff would result in a series of complex "mini-trials" that would render a class action too burdensome or unmanageable. *See Amoco Prod. Co. v. Hardy*, 628 S.W.2d 813, 817 (Tex.Civ.App.—Corpus Christi 1981, writ dism'd); *see also State of Ala. v. Blue Bird Body Co.*, 573 F.2d 309, 322–24 (5th Cir. 1978). If fact-specific mini-trials are not avoided, the common issues of law do not create economies of scale. *See Brister*, 722 S.W.2d at 773.

Further, each class member's ability to factually prove his case is an important consideration for the Banks in determining the suit's settlement value and in deciding to proceed to trial. The proposed class membership was easily identified because the names and addresses of *all* override owners were available based on CFL's internal list of override owners. However, not all override owners could hold the Banks liable for the alleged tortious conduct. Only override owners who did not receive payment from CFL during a specified time whose revenue went into the restricted account could establish the

---

5. Appellants only sought class certification under rule 42(b)(1)(B) and 42(b)(4); appellants did not seek certification pursuant to sections (b)(1)(A), (b)(2), or (b)(3) of rule 42. *See* Tex.R.Civ.P. 42.

Banks' liability for conversion, tortious interference, breach of fiduciary duty, or fraud.

The Banks had a genuine interest in conducting discovery to determine which of the override owners met this criteria. Appellants argue as if none of the class members was properly paid by CFL and that all would have some claim against the Bank. However, the Banks presented evidence that CFL fully paid some override owners during this disputed time period. Pursuant to rule 42(f), "Unnamed members of a class action are not to be considered as parties for purposes of discovery." TEX.R.CIV.P. 42(f). If forced to proceed as a class action, the Banks, without the benefit of discovery, could only speculate about who in the proposed class had not been paid by CFL during the time period the Banks allegedly converted proceeds from oil and gas production.[6]

A class action in the present case is not necessarily superior to other methods of adjudication because (i) there is a tremendous number of similar but separate factual issues to be resolved with each class member; and (ii) a class action may unfairly impinge on the Banks' ability to evaluate its case, determine settlement value, and prepare for trial if necessary. *See* TEX.R.CIV.P. 42(b)(4).

Although these fact issues and considerations do not prevent class certification as a matter of law, such concerns indicate that the trial court did not act irrationally in exercising the discretion assigned to it. If this Court may not substitute its judgment for that of the trial court, then the appellate record reveals sufficient facts upon which the trial court could have rationally exercised its discretion. *See Downer,* 701 S.W.2d at 242. We cannot say that the trial court made a choice that was legally unreasonable in light of the facts and circumstances in this case.

*See Loftin v. Martin,* 776 S.W.2d 145, 146 (Tex.1989) (orig. proceeding) (mere error in judgment is not abuse of discretion).

Because the appellate record does not show that the trial court abused its discretion in refusing to certify the prospective class under rule 42(b)(1)(B) or 42(b)(4), we overrule point of error one.

## FINDINGS OF FACT & CONCLUSIONS OF LAW

■ In point of error two, appellants contend that the trial court abused its discretion by failing to provide the basis for its decision. Appellants concede that Texas law does not require the trial court to make findings of fact or conclusions of law in connection with an interlocutory appeal of a class-certification hearing. Nevertheless, appellants urge that the trial court's refusal to explain its reasoning denied them the opportunity to present their strongest and most cogent argument to this Court. Appellants conclude that the trial court should be reversed where legal error produces an unjust result that unfairly prejudices a litigant. *See Brister,* 722 S.W.2d at 773.

An interlocutory appeal of a class action certification is authorized by the Texas Civil Practice and Remedies Code.[7] Appeals from interlocutory orders are governed by rule 42(a) of the rules of appellate procedure. Rule 42(a) provides:

(a) **Mandatory Acceleration.** (1) Appeals from interlocutory orders (when allowed by law) shall be accelerated.... The trial judge need not file findings of fact and conclusions of law, but may file findings and conclusions within thirty days after the judgment is signed.

TEX.R.APP.P. 42(a)(1).

Contrary to the federal approach, our state rules of civil procedure do not require the

---

6. Pursuant to rule 40 of the rules of civil procedure, the potential class members may, as named parties, bring a single suit to assert any right to relief arising out of the same course of conduct, thereby providing the benefits of a single suit and the safeguards of full discovery. *See* TEX.R.CIV.P. 40.

7. Except as authorized by statute, no appeal lies from an interlocutory order. *Cherokee Water Co. v. Ross,* 698 S.W.2d 363, 365 (Tex.1985); *Browne v. Bear, Stearns & Co.,* 766 S.W.2d 823, 824 (Tex.App.—Dallas 1989, writ denied). Section 51.014 provides:

A person may appeal from an interlocutory order of a district court, county court at law, or county court that:

. . . . .

(3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure.

TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(3) (Vernon Supp.1994).

trial court to make findings of fact or conclusions of law with a class-certification hearing. *See* Tex.R.App.P. 42(a); *Varkonyi v. Troche*, 802 S.W.2d 63, 64 (Tex.App.—El Paso 1990, orig. proceeding). Consequently, the trial court's decision to not file discretionary findings of fact or conclusions of law does not constitute legal error; therefore, the trial court's decision authorized by statute is not susceptible to the proposed harm analysis.

On appeal, our task is to make an independent inquiry of the entire record to determine if the court abused its discretion in denying certification. *See Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 853 (Tex.1992); *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 919 n. 9 (Tex.1991) (orig. proceeding). Consequently, we are not limited to a review of the "sufficiency of the evidence" to support the findings made or limited to the specific legal conclusions reached by the court. *See Rossa v. United States Fidelity & Guar. Co.,* 830 S.W.2d 668, 672 (Tex.App.—Waco 1992, writ denied); *see also Luxenberg v. Marshall,* 835 S.W.2d 136, 142 (Tex.App.—Dallas 1992, orig. proceeding).

Although findings and conclusions can be helpful in assisting an appellate court in determining whether the trial court made its determination in a reasonable and principled fashion, we nevertheless review the entire record only to determine if there is some evidence to support the trial court's ultimate decision; if so, there can no abuse of discretion. Because the trial court did not err in refusing to make findings of fact and conclusions of law, we overrule point of error two.

Accordingly, we affirm the trial court's order.