**SOUTHWESTERN REFINING COMPANY, INC., Kerr–McGee Corporation, and Sherwood Breaux, Appellants,**

v.

**Julia BERNAL, et al., Appellees.**

No. 13–97–218–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 11, 1997.

Rehearing Overruled Jan. 15, 1998.

Frank E. Weathered, L. Nelson Hall, Dunn & Weathered, Corpus Christi, for appellants.

Andres Christian Pereira, Fleming, Hovenkamp & Grayson, Houston, William D. Bonilla, Ruben Bonilla, Jr., Bonilla & Berlanga, Corpus Christi, Jonathan R. Bonilla, George Fleming, Debra Brewer Hayes, Houston, Tony Bonilla, Sr., Bonilla & Chapa, Corpus Christi, for appellee.

Before FEDERICO G. HINOJOSA, Jr., CHAVEZ and RODRIGUEZ, JJ.

## OPINION

CHAVEZ, Justice.

Southwestern Refining, et al.[1] bring this interlocutory appeal challenging the certification of a class action against them consisting of 904 persons who allegedly suffered personal injuries as a result of a tank explosion at appellants' refinery in Corpus Christi, Texas on January 26, 1994. The trial court ordered that the class action proceed in three phases. The first stage will address the liability of appellants for negligence, strict liability, toxic trespass, nuisance, and gross negligence. If there is a finding of gross negligence, then the second phase will determine the amount of punitive damages. In the third phase the individual class members will be required to show specific injuries or damages and that those injuries or damages were proximately caused by the explosion at appellants' refinery. The punitive damages award will be proportionately reduced according to the number of individuals who fail to show causation or actual damages during the third phase.

Appellants argue that appellees have failed to establish that joinder of all the class members is impractical, because in fact all the class members were already joined together in one lawsuit when class certification was sought. Appellants also contend that Texas law forbids separating determination of the plaintiffs' injuries from determination of the fault of the defendants and assessment of punitive damages, and that the individual issues of causation and actual damages predominate over the common issues in this case. They argue that the case plan authorized by the trial court will deny them opportunities for discovery from the individual class members who are not named as representatives of the class. They also contend that the trial court erred in appointing the counsel for the 904 joined plaintiffs to be counsel for the class because of possible conflicts of interest between the class and members who may wish to opt out. Finally, they argue that the notice to class members authorized by the trial court is deficient because it does not inform the class members of the alleged conflict of interest.

■ The plaintiff has the burden in the trial court of establishing the right to proceed as a class. *Clements v. LULAC,* 800 S.W.2d 948, 952 (Tex.App.—Corpus Christi 1990, no writ). On appeal, the standard of review for class certifications is "abuse of discretion." *General Motors Corp. v. Bloyed,* 916 S.W.2d 949, 955 (Tex.1996). We will modify the certification order to postpone assessment of punitive damages until after the actual damages of the class representatives have been determined, and, with that modification, affirm the class certification.

### Whether Joinder is Impractical

■ One of the requirements for a class action is that the class be so numerous that joinder of all members is impractical. TEX.R. CIV. P. 42(a)(1). "Impractical" does not mean impossible. *Chevron U.S.A., Inc. v. Kennedy,* 808 S.W.2d 159, 161 (Tex.App.—El Paso

---

1. Appellants are Southwestern Refining Company, Inc., Kerr–McGee Corporation, and Sherwood Breaux.

1991, writ dism'd w.o.j.). In evaluating whether this provision has been met, the most obvious consideration is the size of the class itself. 7A CHARLES ALAN WRIGHT, ARTHUR MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1762 (2d ed.1986).[2] However, this determination is not based on numbers alone, but rather is based on whether joinder of all members is impractical in view of the size of the class and such factors as judicial economy, the nature of the action, geographical locations of class members, and the likelihood that the class members would be unable to prosecute individual lawsuits. *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 653 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.); *National Gypsum Co. v. Kirbyville Indep. Sch. Dist.*, 770 S.W.2d 621, 627 (Tex.App.—Beaumont 1989, writ dism'd w.o.j.).

■ This case presents an unusual procedural history wherein all the members of the class were, in fact, already joined as plaintiffs. Therefore, appellants argue, joinder of all members of the class can not possibly be "impractical" since it has already been accomplished. However, we are aware of no case, and appellants refer us to no case, where a trial court was ever held to have abused its discretion in certifying a class in excess of 900 over objections as to numerosity and impracticality. Treating these 904 persons as a class, rather than an enormous mass of joined plaintiffs, will provide substantial benefits in economy and management of the trial. Our case bears some similarity to *Bates v. Tenco Services Inc.*, 132 F.R.D. 160 (D.S.C.1990) where as many as one hundred eighty subdivision residents sought certification of a class action against a neighboring jet fuel storage and distribution facility. Despite arguments by the defendant that the plaintiffs could easily be joined since they all lived in the same area, the court certified the class, reasoning that, with one hundred eighty potential plaintiffs, a class action would streamline litigation and be a far more practical vehicle for the plaintiffs' claims than permissive joinder. *Bates*, 132 F.R.D. at 163. In this case, the number of potential plaintiffs is approximately nine hundred. Given the practical benefits of trying a case with such a large number of plaintiffs as a class action, we hold that the trial court did not abuse its discretion in rejecting appellants' arguments under rule 42(a)(1).

### Separation of Liability and Actual Damages

■ Appellants contend that the three phase trial plan, wherein liability is to be tried first, then punitive damages, and then causation and actual damages, is not permitted under *Iley v. Hughes*, 158 Tex. 362, 311 S.W.2d 648 (1958) and *Transportation Insurance Co. v. Moriel*, 879 S.W.2d 10 (Tex.1994). In *Iley*, the jury found the defendant liable to the plaintiff for personal injuries and agreed on a sum of money to compensate the plaintiff for past medical expenses, but could not agree on damages for diminished earning capacity, physical pain, mental anguish, and exemplary damages. *Iley*, 311 S.W.2d at 649. The trial court refused to grant a mistrial and instead initiated a trial before a new jury to resolve only the outstanding damages issues. *Id.* On appeal, the plaintiff contended that this action was proper under rule 174(b) of the rules of civil procedure, which provides that "[t]he court in furtherance of convenience or to avoid prejudice may order a separate trial of any … separate issue or of any number of … issues." TEX.R. CIV. P. 174(b). While acknowledging that the language of the rule suggested that splitting issues from the same case into separate trials was permissible, the Texas Supreme Court nevertheless felt that consideration of long-standing policy and practice prevented such separate trials. *Iley*, 311 S.W.2d at 651.[3]

---

**2.** Because the Texas rule is patterned after its federal counterpart, FED.R.CIV.P. 23, federal class action law provides authoritative guidance for the Texas courts. *Ventura v. Banales*, 905 S.W.2d 423, 425 (Tex.App.—Corpus Christi 1995, mand. mot. overr.).

**3.** The court noted that separate trials on different issues were not permitted under Texas law before rule 174 was adopted in 1941, and doubted whether the rule was intended to work such a radical departure from longstanding practice. The court was also troubled by the need to harmonize rule 174 with its interpretation of rules 434 and 503 (now found at TEX.R.APP. P. 44.1(b)). *Iley*, 311 S.W.2d at 651. The Texas Supreme Court had held that rules 434 and 503, which

Appellants cite *Moriel* for the proposition that the same jury must determine liability, actual damages, and punitive damages. *Moriel*, 879 S.W.2d at 30.

Appellants contend that it is unfathomable that one set of jurors can persevere through an initial trial on liability and then approximately nine hundred separate trials on causation and damages, as required by the trial plan for this class action. Therefore, they argue, when the initial jury has reached exhaustion and a new jury brought in, they will be forced to argue causation and damages before a jury other than the jury which determined liability, in violation of *Iley*. Appellees argue that rule 42(d) clearly provides that a partial class action may be maintained with respect to particular issues, and numerous class actions have been maintained for particular issues under the identical federal rule. Appellants counter that there is no way to distinguish rule 42(d)'s provision for a class action with respect to particular issues from rule 174(b)'s provision for separate trials on separate issues that was nullified for personal injury cases in *Iley*.

It remains to be seen whether more than one jury will be needed to try this case. Appellees suggest in their brief that the issues of causation and damages may be proven by the use of models, formulas, and damage brochures. Whether appellees will be able to prove causation and damages for the individual class members by such means also remains to be seen. In any event, we do not agree that the same considerations of longstanding policy and practice that inspired the court's decision in *Iley* are present when approximately nine hundred plaintiffs seek to proceed as a class action. As a matter of policy, the gains in efficiency from allowing a single trial to resolve liability issues for the entire class of nine hundred would be enormous. The loss of efficiency from re-trying the liability issues for the single plaintiff in *Iley* is comparatively trifling.

In the class action context, unlike the ordinary personal injury context, the common practice has been to allow separate trials on particular issues. For example, in *Jenkins v.*

*Raymark Industries Inc.*, 782 F.2d 468 (5th Cir.1986), the Fifth Circuit reviewed a certification of a class in asbestos litigation to resolve common issues of product identification, product defectiveness, the "state-of-the-art" defense, gross negligence, and punitive damages, while leaving consideration of the actual damages suffered by each class member to be individually adjudicated. *Jenkins*, 782 F.2d at 471. The court held that resolving these selected common issues would significantly advance the resolution of the underlying cases, and that the trial court's plan was clearly superior to repeating the litigation of the common issues hundreds of times over. *Id.* at 472–73. Similar results have been reached in other jurisdictions. *See Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 190 (4th Cir.1993) (asbestos liability tried first as common issue, followed by trial of individual damages issues); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988) (liability of defendant for toxins migrating from landfill tried first, damages reserved for later hearings); *Federal Skywalk Cases*, 93 F.R.D. 415, 424 (W.D.Mo.1982) (class action to determine liability issue only); *Hernandez v. Motor Vessel Skyward*, 61 F.R.D. 558, 561–62 (S.D.Fla. 1973) (class action maintained for sole issue of negligent food preparation, without class treatment of causation and damages issues).

The Texas Supreme Court has also acknowledged that the policy embodied in *Iley* may give way to other policy considerations. In *Moriel* the Texas Supreme Court determined that assessment of punitive damages should be separated from determinations of liability and actual damages. *Moriel*, 879 S.W.2d at 29–30. While acknowledging that this holding was arguably contrary to *Iley*, the court felt that the need to shield the jury from evidence of the defendant's net worth while it decided liability and actual damages outweighed the policy against piecemeal trials relied on in *Iley*. *Moriel*, 879 S.W.2d at 29–30 n. 29.

We are aware of course, that causation of an injury in fact is often stated as a prerequisite for liability for negligence and other

directed appellate courts to reverse only the part of a judgment that was affected by error, did not

permit remanding a case for further proceedings on damages only without retrial of liability. *Id.*

torts. *See, e.g., Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990). In this sense, appellants argue, it is inappropriate to allow determination of the appellants' negligence before the jury has found that any of the class members have suffered injuries proximately caused by the appellants' negligence. However, we believe appellants afford too much significance to the frequent recitation of proximate cause and injury in fact as elements of a tort claim. While a successful cause of action for negligence requires proof of injuries proximately caused by another's negligence, it is nevertheless possible for one to act negligently without causing damages to others. Obviously, when the plaintiff has suffered no injury that was caused by the defendant, there is nothing for the defendant to be liable for.

In this case, although the first phase allows the jury to determine issues such as whether the appellants were negligent, committed a "toxic trespass," and created a nuisance, appellants will not actually be liable in any amount to the appellees unless and until the appellees satisfy their burden of proving injuries proximately caused by the appellants' wrongdoing. In other words, the first phase will determine whether appellants were negligent, but not resolve whether the appellees succeed on their causes of action for negligence. Whether appellees ultimately succeed on their causes of action will not be determined until appellees are called on to make individual showings of causation and damages. In light of the unique problems presented by class actions involving hundreds of claims and the tremendous gains in efficiency from allowing class treatment of those issues that can be resolved on a class basis, we do not believe the trial court abused its discretion in separating determination of such issues as whether the appellants were negligent from whether appellees suffered damages caused by that negligence.

### Separation of the Punitive Damages Award

▮ Appellants also contend that Texas law does not permit punitive damages to be assessed until after actual damages have been determined. *Moriel* clearly indicates that issues of liability and actual damages

should be submitted to the jury first, and that punitive damages issues are to be presented to the jury only after liability and actual damages have been determined. *Moriel,* 879 S.W.2d at 30. It is also the rule in Texas that exemplary damages must be reasonably proportional to actual damages. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981). However, there can be no set ratio between actual and exemplary damages which will be considered reasonable. *Id.*

The only court yet to confront the issue of separating the determination of punitive and actual damages in a class action brought under Texas law was the Fifth Circuit in *Jenkins v. Raymark,* which held that Texas law did not preclude such an arrangement. *Jenkins,* 782 F.2d at 474. In *Jenkins,* the trial court dealt with the problem of asking a jury to assess punitive damages before actual damages have been determined by first appointing a master to survey the class and report to the jury regarding the extent and gravity of the members' claims. In its decision, the appellate court indicated that the jury hearing the case should be admonished to bear in mind that the actual injuries of most of the class members had not yet been proven. With those safeguards, the court determined that allowing the jury to determine punitive damages before actual damages had been assessed did not violate the requirement in Texas law that punitive damages be reasonably proportionate to actual damages. *Id.*

The certification order in this case does not provide any mechanism for the jury to become familiar with the sort of actual damages present in this case prior to the jury's determination of punitive damages. Such an arrangement is prohibited under *Kraus* because it provides no way for punitive damages to be reasonably proportional to actual damages. *Kraus,* 616 S.W.2d at 910. Therefore, the trial court abused its discretion in devising a trial plan that would allow the jury to assess punitive damages before attaining any familiarity with the actual damages. A better plan, which we adopt as part of our judgment in this case, is to delay assessment of punitive damages until after

actual damages for the class representatives have been proven. This plan still allows the jury to resolve the common issue of punitive damages relatively early in the litigation, but also allows the jury to have an understanding of the extent of actual damages suffered by the class before assessing punitive damages.

### Whether Common or Individual Issues Predominate

 A class action may only be maintained if both part (a) of rule 42 and at least one of the requirements of part (b) is also satisfied. TEX.R. CIV. P. 42. In this case, the trial court certified the class under rule 42(b)(4), which requires that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. TEX.R. CIV. P. 42(b)(4). Appellants point to *RSR Corp. v. Hayes*, 673 S.W.2d 928 (Tex.App.—Dallas 1984, writ ref'd n.r.e.) which held that common questions did not predominate over individual questions in a proposed class action involving tort claims brought by a group of neighbors against a nearby lead smelter. Appellants contend that "[t]here is simply no principled basis upon which to distinguish *RSR* from our case." We disagree.

In *RSR* the trial plan was to provide class treatment to all issues simultaneously. The *RSR* court held that, because the individual plaintiffs had been exposed to widely varying levels of lead from the smelter, resolving issues of causation and damages for one class member would not resolve them for the other class members. *Id.* at 932–33. However, in this case, the trial plan calls for evaluation of causation and damages on an individual basis. Only the appellants' possible wrongdoing relevant to appellees' claims of negligence, strict liability, toxic trespass, nuisance, and gross negligence, and punitive damages are to be tried as a group. Appellants do not contend that the questions relevant to these issues, i.e., whether the defendants failed to establish and implement safety procedures, whether the defendants failed to adequately train

their employees, whether the defendants failed to inspect equipment, etc., require individual evaluation relative to each class member. The issues which are to be tried for the entire class at once in this case are the issues which are common to the entire class. Treatment of causation and damages, which the *RSR* court found inappropriate for class treatment, are to be determined on an individual basis in this case. We hold that common questions do predominate in the first and last stages of the trial, in which issues are to be resolved on a class basis. Although individual issues may predominate in determination of causation and damages, the trial court's plan explicitly calls for individual showings of causation and damages. The trial court did not abuse its discretion in holding that common questions predominate over individual questions in this class action under the organization system set forth in the certification order.

### Whether Appellants will be Denied Discovery

 Appellants contend that, if this case is to proceed as a class action, they will be denied discovery from the members of the class who are not class representatives, and that the inability to obtain discovery from those individuals will prevent them from asserting a limitations defense and rebutting the causation and damages claims made by the class members. Appellees agree that no discovery will be permissible from class members who are not class representatives, but argue that mechanisms such as formulas, models, or damage brochures are appropriate for proving damages in a class action, so no individual discovery is necessary.

 Under rule 42(f) of the Texas Rules of Civil Procedure "Unnamed members of a class action are not to be considered parties for purposes of discovery." TEX.R. CIV. P. 42(f). This rule does not provide a complete prohibition against discovery from unnamed members of the class, it only provides that unnamed members will not be considered parties for purposes of discovery. The general discovery rule, which permits discovery of any matter which is relevant to the subject matter in the pending action, remains in

effect. Tex.R. Civ. P. 166b(2). Discretion for determining what discovery will be allowed under the rules governing discovery lies with the trial court. *Dillard Dept. Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex.1995). We expect that appellants will be able to develop any defenses they may have against any of the class members through the discovery permitted by the trial court.

Appellants cite *Vinson v. Texas Commerce Bank—Houston Nat'l Ass'n*, 880 S.W.2d 820 (Tex.App.—Dallas 1994, no writ) in support of their argument that they will be deprived of discovery from the members of the class who are not class representatives. In *Vinson*, a group of plaintiffs sought certification of a class action against banks that had allegedly converted funds sent to the bank by a company referred to as CFL and owed to the plaintiffs. The banks argued that some of the plaintiffs had not been sent any money by CFL and therefore had not lost any money. In refusing to certify the class, the *Vinson* court reasoned that "[i]f forced to proceed as a class action, the Banks, without the benefit of discovery, could only speculate about who in the proposed class had not been paid by CFL during the time period the Banks allegedly converted proceeds." *Id.* at 827. Although the *Vinson* court cites rule 42(f), the court does not explain how, just because the unnamed members of the class could not be treated as parties for purposes of discovery, the defendants were not entitled under rule 166b(2) to discovery on such a crucial issue as whether the unnamed class members were in a position to suffer any damages. Such discovery is within the bounds of "any matter which is relevant to the subject matter in the pending action" set out for permissible discovery in rule 166b(2).

We hold that proceeding with this case as a class action does not deprive the appellants of the opportunity to seek discovery from the unnamed members of the class.

### Adequacy of Counsel

The representative parties in a class action must fairly and adequately protect the interests of the class. Tex.R. Civ. P. 42(a)(4). Appellants assert that the attorneys for the class have a conflict of interest because they are also counsel for each of the individual members of the class. As counsel for the class, these attorneys have an interest in keeping the class as large as possible, which may be at odds with the interests of their individual clients who may seek their advice regarding whether they should opt out of the class. Appellants cite *Dresser Industries, Inc. v. Snell*, 847 S.W.2d 367, 373 (Tex. App.—El Paso 1993, no writ) for the proposition that a possible conflict of interest between attorneys for the class and certain class members is among the factors to be considered in determining whether the "adequacy of representation" requirement has been met. However, the Fort Worth appellate court, in *Adams v. Reagan*, 791 S.W.2d 284, 291 (Tex.App.—Fort Worth 1990, no writ), held that a party contesting certification of a class action brought against it did not have standing to complain of a conflict of interest faced by attorneys for the class, because the attorneys facing the possible conflict were not their attorneys. The Fort Worth court concluded that such a complaint was not appropriate for consideration in "adequacy of representation" analysis. *Id.*

In this case, appellants' point of error does not argue that the alleged conflict of interest runs afoul of the "adequacy of representation" requirement, rather it simply alleges that the trial court abused its discretion in appointing the attorneys who were counsel for the plaintiffs already joined to be counsel for the class. The order certifying the class also contained a provision appointing counsel for the class; therefore we consider appellants' argument in this point to be only that the appointment of counsel was error, not the entire certification.

A similar complaint was brought in *In re Agent Orange Product Liability Litigation*, 800 F.2d 14 (2nd Cir.1986). In that case, the appellants moved for disqualification of the counsel that had been appointed for the class, arguing that a conflict of interest existed between the plaintiffs who remained in the class and those who opted out. The court acknowledged that "traditional principles" suggest requiring an attorney to withdraw when a conflict of interest emerges

among the attorney's clients. *Id.* at 18. However, the court noted that, in the class action context, "[i]n order to protect the interests of all members of the class, the court needs, insofar as is practicable, the benefit of the participation of attorneys who are familiar with the litigation." *Id.* at 19. The court held that the traditional rules regarding conflicts of interest and disqualification should not be mechanically applied to class actions, but rather the court should balance the interests of the various groups of class members and the interests of the public and the court in achieving a just and expeditious resolution of the dispute. *Id.*

In this case, the alleged conflict of interest is still speculative, since there is nothing in the record indicating that any member of the class wishes to consider opting out of the class. On the other hand, members of the class stand to benefit from the familiarity with the case that has been developed by the class counsel. The court and the general public will benefit from the increased efficiency resulting from allowing this case to proceed with the attorneys appointed to continue as class counsel who were already familiar with the case. We conclude that the trial court did not abuse its discretion in appointing the attorneys for the joined plaintiffs to be attorneys for the class.

### Notice

Appellants also contend that the notice to class members approved by the trial court was deficient because it failed to inform the class members of the possible conflict of interest between themselves and their attorneys. Appellees contend that because concern over any such conflicts must yield to other considerations in class actions, no such notice was required.

While we are not convinced that no such notice was required, we do not believe that the failure to provide such notice constitutes error that an adverse party may complain of on appeal. Rule 42(c)(2) requires notice to the members of the class of the nature of the suit, the right to be excluded from the class upon request, the binding effect of the judgment on all those who do not make a timely request for exclusion, and the right of those not requesting exclusion to enter an appearance through counsel. Tex.R. Civ. P. 42(c)(2). No mention is made of providing notice of any conflict of interest. Of course, if a conflict emerges, the attorneys have a duty under the Texas Disciplinary Rules of Professional Conduct to inform their clients of the conflict. Tex. Disciplinary R. Prof'l Conduct 1.06, *reprinted in* Tex. Gov't Code Ann. tit. 2, subtit. G app. A (Vernon Supp.1997). If the attorneys fail to inform their clients of a conflict of interest, that complaint should be made by the clients in a request for disciplinary action, not by the adverse party in an appeal of the class action certification. *Adams,* 791 S.W.2d at 291. Therefore we find that the trial court committed no error in the notice provision of the class certification order.

### Conclusion

We MODIFY the class certification to reflect that the determination of punitive damages will take place only after causation and actual damages have been tried for the class representatives. With this modification, we AFFIRM the certification order.