**E & V SLACK, INC. and Edmonson's Enterprises, Inc., Appellants,**

v.

**SHELL OIL COMPANY, Appellee.**

No. 03–97–00604–CV.

Court of Appeals of Texas, Austin.

May 14, 1998.

Before POWERS, KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

This is an interlocutory appeal from an order refusing to certify a class action under Rule 42 of the Texas Rules of Civil Procedure. Appellants, the named representatives,[1] bring one point of error complaining that the trial court abused its discretion in denying their motion for class certification. We will affirm the order of the trial court.

## BACKGROUND

Appellee Shell Oil Company is a marketer of gasoline that leases Shell service stations to "dealers" who operate the stations; Shell also sells gasoline to the station dealers. Shell currently has over 3,700 service stations run by approximately 2,850 lessee dealers. The named class representatives are former service station operators who leased their stations from Shell pursuant to a Motor Fuel Station Lease that specified a monthly rent. Appellants purchased their gasoline from Shell under a Dealer Agreement providing that the dealer would pay Shell's direct dealer price, or dealer tank wagon price ("DTW"). Shell bases its DTW prices upon competitive market forces and supply factors. For pricing purposes, Shell's nationwide service station structure is divided into approximately 462 price administration districts (PADs), which are further broken down into trade areas. Accordingly, the DTW may be different from day to day, PAD to PAD, and from trade area to trade area. The price may also vary among grades and brands. Under the Dealer Agreement, the DTW price is effective on the date the gasoline is delivered and the dealer is obligated to pay the delivery invoice prices.

Since 1982, Shell has offered to its dealers a voluntary program called the Variable Rent Program (VRP). The VRP grants reductions in a dealer's monthly rent payment if the dealer's monthly gas purchases from

---

1. The named representatives are Eddie T. Slack, Jr. d/b/a E & V Slack, Inc. and Herbert A. Edmonson d/b/a Edmonson's Enterprises, Inc.

Shell exceed a stated threshold volume which is determined annually for each dealer on an individual basis. The VRP works as follows: once the gasoline purchase exceeds the threshold volume, the dealer's contract rent is reduced by a set amount[2] per gallon for the excess gasoline. For example, if a dealership sells 10,000 gallons over its threshold volume at a reduction rate of 3 cents a gallon, the dealer's monthly rent is reduced by $300. The VRP is a voluntary program. Those dealers who choose not to enter into the program simply pay the contract rent specified in their Motor Fuel Lease. The VRP is renewed annually, although Shell may choose to discontinue the program at any time. Shell considers its VRP proprietary information and does not disclose to its dealers how it determines the threshold volume or other details of the program.

Appellants claim Shell's business practices were designed to collect secret rent in excess of the contract rent specified in the Motor Fuel Lease. Specifically, they claim Shell manipulated the DTW (gasoline) price to include a "rent" charge that was determined by the VRP formula. Appellants sued Shell alleging breach of contract, negligent misrepresentation, fraud and fraudulent concealment, statutory fraud, and violations of the Texas Deceptive Trade Practices and Consumer Protection Act (DTPA). *See* Tex. Bus. & Com.Code Ann. §§ 17.41–.63, 27.01 (West 1987 & Supp.1998). The named representatives then moved to certify a class of "[a]ll past and present lessee-dealers of Shell gas stations in the United States who participated in Shell's Variable Rent Program." In addition to damages, appellants requested injunctive relief in two respects: (1) that Shell reveal the VRP formula to all class members, and (2) that Shell notify individual class members of the nature of their claims. After a hearing on the motion, the trial court denied certification and this appeal followed.

## STANDARD OF REVIEW

We review a court order denying class certification using an abuse of discretion standard. *See Forsyth v. Lake LBJ Inv. Corp.*, 903 S.W.2d.2d 146, 149 (Tex.App.—

Austin 1995, writ dism'd w.o.j.). We view the evidence in the light most favorable to the trial court's ruling and indulge every presumption in favor of that ruling. *See Vinson v. Texas Commerce Bank–Houston, Nat'l Ass'n,* 880 S.W.2d 820, 823 (Tex.App.— Dallas 1994, no writ). Even when an appellate court might reach a different decision, the trial court's ruling does not necessarily constitute an abuse of discretion. *Dresser Indus., Inc., v. Snell,* 847 S.W.2d 367, 371 (Tex.App.—El Paso 1993, no writ). A trial court abuses its discretion only when it fails to properly apply the law to undisputed facts, when it acts arbitrarily or unreasonably, or when its ruling is based on factual assertions not supported by material in the record. *Health & Tennis Corp. of Am. v. Jackson,* 928 S.W.2d 583, 587 (Tex.App.—San Antonio 1996, no writ); *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 648 (Tex.App.— Houston [14th Dist.] 1995, writ dism'd w.o.j.); *see also Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

## REQUIREMENTS OF CLASS CERTIFICATION

In order to be certified as a class, Texas Civil Procedure Rule 42(a) prescribes that the party must first satisfy four requirements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Tex.R. Civ. P. 42(a). Once these prerequisites are shown, to maintain a class action the party must also plead and prove that the action falls within one of the categories listed under Rule 42(b). Appellants claim their class action falls under Rule 42(b)(1)(A) with respect to their claim for injunctive relief and Rule 42(b)(4) with respect to their claim for damages:

(1) individual suits would create a risk of

---

**2.** Since the program's inception, the reduction rate per gallon has ranged from 2.5 to 4.5 cents.

(A) inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the class, or

. . .

(4) common questions of law or fact predominate over questions affecting only individual members and a class action is the superior method for fair and efficient resolution of the controversy.

Tex.R. Civ. P. 42(b)(1)(A), (b)(4). A trial court *may* certify a class action if a party establishes all four prerequisites in Rule 42(a) and at least one of the criteria for class maintenance in Rule 42(b). *See id.* 42. "Even if certification would have been proper, a denial may still not be an abuse of discretion." *See Vinson,* 880 S.W.2d at 824.

## ANALYSIS

While the record may adequately support a finding of numerosity[3] and typicality[4] under Rule 42, we determine the trial court could have found appellants fail to satisfy the adequate representation and commonality requirements of Rule 42(a) and the predominance and superiority requirement of Rule 42(b)(4).[5] We review those elements below.

### *Adequacy of Representation*

The named representatives in a class action must fairly and adequately protect the interest of the class members. Tex.R. Civ. P. 42(a)(4). This requirement has two components: (1) an absence of antagonism between the class representatives and the class members, and (2) an assurance the representative parties will vigorously prosecute the class claims and defenses. *See Weatherly,* 905 S.W.2d at 651; *Forsyth,* 903 S.W.2d at 150. Adequacy of representation is a question of fact based on the individual circumstances of the case. Factors affecting this determination include: (1) adequacy of

counsel; (2) potential conflicts of interest between the class members; (3) personal integrity of the plaintiffs; (4) the representatives' familiarity with the litigation, and their belief in the legitimacy of the grievance; (5) whether the class is unmanageable because of geographical limitations; and (6) whether the plaintiffs can afford to finance the class action. *Id.*

First, there exists a conflict of interest between the named representatives and other members of the class. Although the class undisputedly consists of both former and present dealers, the named representatives—Eddie Slack, Jr. and Herbert Edmonson—are *former* Shell dealers. Furthermore, Slack owns and operates three Chevron stations which compete with Shell stations. The former dealers do not possess the same interests as the present dealers; their interests are not "wholly consistent." *See Amchem Products, Inc. v. Windsor,* —— U.S. ——, ——, 117 S.Ct. 2231, 138 L.Ed.2d 689, 714 (1997) (present and future asbestos victims had conflict of interest); *Adams v. Reagan,* 791 S.W.2d 284, 291 (Tex.App.—Fort Worth 1990, no writ). This conflict is not merely speculative but is evidenced in the record. *See Employers Cas. Co. v. Texas Ass'n of Sch. Bd. Workers' Compensation Self–Ins. Fund,* 886 S.W.2d 470, 476 (Tex.App.—Austin 1994, writ dism'd w.o.j.) (intra-class antagonism must exist and not be merely speculative). In their motion to certify the class, appellants acknowledge the existence of a conflict by suggesting the class be divided into two subclasses: present lessee-dealers and former lessee-dealers. Furthermore, the deposition testimony of the named representatives, both *former* dealers, indicates a desire to dismantle the VRP. On the other hand, Terry Raynor, a *present* dealer who is not a named representative, testified that he had benefitted

---

**3.** The potential class undisputedly consists of well over two thousand dealers.

**4.** The class representatives claim their damages in the amount of the excess rents were caused by the VRP formula and Shell's use of VRP information. They bring causes of action for breach, fraud, negligent misrepresentation, and statutory violations all based upon the VRP formula and Shell's subsequent conduct. The proposed class,

if damaged, was damaged by the "same systematic ... scheme" and similar course of conduct. *See Health & Tennis Corp. of Am. v. Jackson,* 928 S.W.2d 583, 588 (Tex.App.—San Antonio 1996, no writ); *Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 373 (Tex.App.—El Paso 1993, no writ).

**5.** In their primary suit for damages, appellants requested class certification under Rule 42(b)(4).

from the program and did not want it terminated. Raynor also expressed concern about damaging Shell's reputation as a result of this lawsuit: "[Shell's] image is my image." Current dealers depend on the economic viability and public goodwill of Shell, as well as the need to maintain a good contractual relationship; former dealers have no such concerns and may only desire a maximum recovery. There is some conflict of interest between the named representatives and other class members.

Additionally, the plaintiffs' own petition casts doubt on their ability to finance the class action. As part of their injunctive relief, the named representatives request that Shell apprise all class members of the nature of the claims.[6] Essentially, appellants would like Shell to pay the cost of notifying the class as required under Rule 42. *See* Rule 42(c)(2). This request conveys their reluctance to make a financial commitment to this class action. This in turn suggests an unwillingness to vigorously prosecute the class claims by notifying other members of the right to join the class. *See American Express Travel Related Servs. Co., Inc. v. Walton,* 883 S.W.2d 703, 709 (Tex.App.—Dallas 1994, no writ) (interpreting Rule 42(c)(2) requirement that party claiming class to send notice also includes paying cost of notice).

Ultimately, adequacy of representation turns on the zeal and competence of class counsel as well as the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees. *Forsyth,* 903 S.W.2d at 151 (citing *Horton v. Goose Creek Indep. Sch. Dist.,* 690 F.2d 470, 484 (5th Cir.1982), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983)). The history of this suit casts further doubt on the adequacy of this representation. The present cause was originally filed by a lone plaintiff; four other plaintiffs have since joined and been dismissed. While the current named representatives have proclaimed their interest, they did not enter this suit until certain other plaintiffs had been dismissed. The significant change in class representa-

tives undermines the appellants' purported ability to take an active interest in and control the litigation.

Reviewing all these factors, the trial court could have found the named representatives unable to fairly and adequately protect the interests of the class under Rule 42(a)(4).

### Commonality & Predominance of Common Issues

 Rule 42(a) requires there exist questions of law or fact common to the class. Tex.R. Civ. P. 42(a)(2). Questions are common to the class if an answer as to one class member is an answer as to all class members. *Weatherly,* 905 S.W.2d at 648; *Life Ins. Co. of Southwest v. Brister,* 722 S.W.2d 764, 772 (Tex.App.—Fort Worth 1986, no writ). The rule does not require that all or even a substantial portion of the legal and factual questions be common to the class. *Microsoft Corp. v. Manning,* 914 S.W.2d 602, 611 (Tex.App.—Texarkana 1995, writ dism'd). The commonality requirement is subsumed under the more stringent Rule 42(b)(4) requirement that common questions of law or fact predominate over questions involving individual members. *See Amchem Prods., Inc.,* —— U.S. at ——, 117 S.Ct. at 2242–44, 138 L.Ed.2d at 704 (construing analogous requirements under Federal Rule Civil Procedure 23). "Predominate" is not defined but it is clear that the mere existence of common questions is not sufficient for class certification; the court must evaluate the relationship between the common and individual issues. *See Brister,* 722 S.W.2d at 772 (citing 7a Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure: Civil* § 1778 (1985)). The test is not whether the common issues outnumber the individual issues, but whether common issues will be the focus of most of the efforts of the litigants and the court. *See id.* at 772. We will discuss the commonality requirement together with the predominance requirement.

Appellants' claims rest on certain conduct by Shell: (1) implementing and administering the VRP formula to determine a rent in excess of the contract rent, and (2) imposing

---

**6.** In addition to requesting that Shell notify all members of the class of their claims, appellants also request that the VRP formula be revealed to the class.

a hidden rent charge in the DTW price of gasoline. There is some evidence to support the allegation that the VRP formula contained a uniform set of factors that was applied uniformly to all dealers in the program. There is also evidence that the VRP program was administered in a substantially similar manner. This creates some common questions:

(1) Whether Shell represented to class members they would receive a rent reduction under the VRP;

(2) Whether the VRP formula was used to calculate a target rent ("indifference rent");

(3) Whether the VRP formula was used to calculate an amount ("net indifference rent") based on the difference between the contract rent and target rent; and

(4) Whether Shell concealed from the class members an intention to use the VRP formula to calculate a hidden rent amount.

However, the heart of this claim is that Shell secretly imposed in the DTW price of gasoline the net indifference rent calculated by the VRP formula, causing the dealers to actually pay more "rent" than that provided for in their Motor Fuel Leases. Such an allegation requires an analysis of the DTW price charged each dealer. The DTW price for each dealer is based on local factors. The price may differ from day to day, from PAD to PAD (price administration district), and from trade area to trade area. Shell has approximately 462 PADs. Calculating the amount of rent disguised in the individual dealer's DTW price is an essential part of appellants' cause of action. The trial court made findings of fact and conclusions of law that the alleged conduct raises several individual questions of fact:

(1) Whether each dealer participated in the VRP;

(2) The contract rent under each dealer's lease agreement, which is undisputedly particular to each dealer due to local factors;

(3) The actual amount of rent paid under the lease agreement and VRP rent reduction program;

(4) The amount of DTW charged for each delivery of gasoline to each dealer during participation in the VRP;

(5) The commercial reasonableness of each DTW price charged to a particular dealer at a particular time in a particular location; and

(6) Whether each dealer was damaged.

At trial the court and parties would reasonably focus a substantial amount of their efforts on how and when Shell allegedly imposed the hidden rent charge. *See Health & Tennis Corp. of Am.*, 928 S.W.2d at 590; *Microsoft Corp.*, 914 S.W.2d at 611. Although the legal theories of liability may be common to the class as a whole, questions of fact necessary to prove Shell's liability are individual as to each dealer. Any one of the above questions could produce a multitude of answers owing to the peculiar factual circumstances of the individual class members. The trial court could have found that the many factual issues necessary to prove liability predominate over common questions of law or fact.

The trial court could also have found that Shell's purported defenses interjected individual fact issues. In some cases, the existence of defenses may make the action more suitable for class certification. *Microsoft Corp.*, 914 S.W.2d at 613 (holding trial court may have determined affirmative defenses were common issues). In other cases, affirmative defenses may demonstrate that the parties' efforts will focus on individual issues. Shell alleges (1) some dealers signed a release thereby waiving their right to bring suit, and (2) some dealers may be barred by the limitations statute because the VRP has been offered since 1982 and some class members have not been Shell dealers for several years. Individual questions could therefore include:

(1) The statute of limitations applicable to each dealer's claims;

(2) Whether each dealer knew or should have known of the basis for his claim;

(3) Whether individual dealers executed releases of any claims against Shell; and

(4) The circumstances surrounding the termination of former dealers.

While they alone do not destroy the class as a matter of law, the above questions do require individual answers and will necessarily be a focus at trial.

■ Although a single common question may provide adequate grounds for a class action, *see Microsoft Corp.*, 914 S.W.2d at 611, we decline to hold that the trial court acted arbitrarily or unreasonably in concluding the named representatives here failed to satisfy the commonality and predominancy requirements of Rule 42(a) and 42(b).

### Superiority

■ In addition to the requirement that common issues predominate, Rule 42(b)(4) requires that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. Tex.R. Civ. P. 42(b)(4). Questions of manageability, litigation expense and judicial economy are relevant to 42(b)(4) class actions. *See Vinson*, 880 S.W.2d at 826. The present case involves a great number of parties who may have owned more than one Shell station. Appellants' case against Shell is riddled with significant factual considerations peculiar to individual dealers. Consequently, the trial court could have found that determining whether Shell was liable to each member for hiding a rent charge in each DTW price, whether each member waived his right to a cause of action by release, or whether the statute of limitations ran for each member before this suit was filed would result in a series of complex mini-trials that would render a class action burdensome or unmanageable. *Id.* Fact-specific mini-trials destroy the economies of scale that supposedly flow from common issues of law. *Id.* (citing *Brister*, 722 S.W.2d at 773). Furthermore, a class action may unfairly impinge on Shell's ability to defend itself due to the rule that "unnamed members of a class action are not to be considered as parties for purposes of discovery." *See* Rule 42(f). While testimony reveals the named representatives have signed releases, Shell could only speculate about who in the proposed class has not signed a release. *See Vinson*, 880 S.W.2d at 827. The trial court could have reasonably determined that a class action in the instant case is not necessarily superior to other methods of adjudication.

### Rule 42(b)(1)(A)

In addition to their request that a class action be maintained under Rule 42(b)(4) (the predominance and superiority requirement), appellants also requested injunctive relief under Rule 42(b)(1)(A), which calls for certification of a class when individual litigation is likely to produce inconsistent or varying adjudication with respect to individual members of the class which would establish incompatible standards of conduct for the defendant. *See* Tex.R. Civ. P. 42(b)(1)(A).

■ Because we have determined that the trial court did not abuse its discretion in finding that appellants do not satisfy the common issues or adequate representation requirements of Rule 42(a), mandatory prerequisites to class certification, we do not address whether this class is capable of being maintained under Rule 42(b)(1)(A). Furthermore, part of the injunctive relief sought is merely a request that Shell provide notice to the class, which under *American Express* is a burden the plaintiff carries. *See American Express Travel Related Servs. Co., Inc.*, 883 S.W.2d at 709.

### CONCLUSION

Based on our determination that the trial court did not abuse its discretion in denying the motion to certify the class, we overrule appellants' sole point of error and affirm the trial court's order.