# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00524-CV

**Citizens Insurance Company of America; Citizens, Inc.;
Harold E. Riley and Mark A. Oliver, Appellants**

**v.**

**Dr. Fernando Hakim Daccach, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. 99-09099, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## O P I N I O N

Appellants Citizens Insurance Company of America (CICA), Citizens, Inc., Harold E. Riley

and Mark A. Oliver (collectively ACitizens@)[1] bring this interlocutory appeal challenging the district court=s

order certifying a class action. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(3) (West Supp.

2003). The underlying suit was brought by appellee Dr. Fernando Hakim Daccach (ADr. Hakim@) against

appellants for selling securities from Texas without complying with the registration requirements of the Texas

Securities Act (the ASecurities Act@). *See* Tex. Rev. Civ. Stat. Ann. art. 581-33A(1) (West Supp. 2003);

---

[1] CICA is a wholly-owned subsidiary of Citizens, Inc. Both are Colorado corporations with their principal place of business in Austin, Texas. Harold E. Riley and Mark Oliver are officers and directors of Citizens, Inc. and, as such, are Acontrol persons@ as defined by the Texas Securities Act. *See* Tex. Rev. Civ. Stat. Ann. art. 581-33F(1) (West Supp. 2003).

*see also* 7 Tex. Admin. Code ' 139.7 (2002). In three issues, Citizens contends that the district court abused its discretion in certifying the class because: (1) the class definition accepted by the district court fails to presently and precisely ascertain the proposed class; (2) the district court conducted an inadequate choice-of-law analysis; and (3) none of the class certification requirements of rule 42 were established. We will modify the class definition, and as modified, affirm the district court=s certification order.

## BACKGROUND

This case concerns certain life insurance policies (ACICA policies@) which Citizens sells only to non-residents and non-citizens of the United States. The CICA policies all allow for the assignment of policy dividends and other benefits to offshore trusts. The trusts use the assigned dividends and other benefits to purchase common stock in Citizens, Inc. Although the CICA policies contain varying options and features, they are all substantially identical with regard to the crediting, earning and payment of dividends and benefits, and the policyholder=s right to elect assignment to the offshore trusts for the purpose of purchasing stock in Citizens, Inc. Evidence in the record shows that in each year since 1996 there have been approximately 30,000 policyholders and at least seventy-five percent of them have assigned their policy dividends and other benefits to the offshore trusts. The average annual premium paid by each policyholder has been approximately $2,000.

On August 6, 1999, the original two named plaintiffs brought a class action suit against Citizens. Alleging numerous causes of action, their original petition principally complained that Citizens sold life insurance policies Awhich could not be sold or approved for sale in the United States by any state insurance or other regulatory agency and did not give the policyholders the rights, benefits and protections

2

of insurance policies approved for sale in the United States.[2]  The plaintiffs requested on their behalf and on

behalf of similarly situated class members compensatory damages, punitive damages, interests, court costs,

and attorneys= fees.

---

[2]  Specifically, the plaintiffs alleged: (1) violations of the Texas Deceptive Trade Practices Act; (2) breach of contract; (3) fraud and fraud in the inducement; (4) negligent misrepresentation; (5) breach of duty of good faith and fair dealing; (6) violations of the Texas Insurance Code; (7) equitable reformation of the CICA policies; (8) conspiracy; and (9) unjust enrichment and the imposition of a constructive trust.

By the time that a sixth amended petition had been filed in December 2001, seven new plaintiffs had been added to the lawsuit, including Dr. Hakim, a neurosurgeon at a teaching hospital in Bogota, Colombia.[3] However, the plaintiffs no longer seek class certification for any of the original causes of action. Except for Dr. Hakim, the plaintiffs are bringing those claims against Citizens only in regards to their individual CICA policies and are referred to as the "individual plaintiffs." Dr. Hakim, on the other hand, has been designated the "class plaintiff" and asserts only the class claims, which consist solely of Citizens= liability for being an unregistered dealer of securities and selling securities from Texas in the form of the CICA policies.[4] *See* Tex. Rev. Civ. Stat. Ann. art. 581-33A(1).[5] This theory was not part of the original petition, but was added in plaintiffs= second amended petition. On behalf of the class, Dr. Hakim complains that "[Citizens] has unlawfully avoided any regulation of the investment feature of the CICA Policies" and seek the remedy of statutory rescission or, in the alternative, statutory damages if they have cancelled their CICA policies. *See* Tex. Rev. Civ. Stat. Ann. art. 581-33D(1), D(3) (West Supp. 2003).

---

[3] Dr. Hakim purchased two of the CICA policies in 1993 and 1994. His dividends were transferred from Citizens= office in Austin to a trust in Panama to purchase stock in Citizens, Inc.

[4] Four of the individual plaintiffs have also been designated as members of the class.

[5] Article 581-33A(1) of the Texas Securities Act provides:

> A person who offers or sells a security in violation of Section 7, 9 (or a requirement of the Commissioner thereunder), 12, 23C, or an order under 23A or 23-2 of this Act is liable to the person buying the security from him, who may sue either at law or in equity for rescission or for damages if the buyer no longer owns the security.

Tex. Rev. Civ. Stat. Ann. art. 581-33A(1) (West Supp. 2003). Section 12 prohibits an unregistered seller of securities from making "a sale of any securities in this state." *Id*. art. 581-12A.

In response to Dr. Hakim=s class securities claims, Citizens filed a motion for summary judgment arguing that the CICA policies do not qualify as securities under the Securities Act. The district court denied Citizens=motion, concluding that the summary judgment evidence of the parties established the existence of a genuine fact issue as to whether the CICA policies are securities under Texas law. The district court then conducted a four-day hearing to consider Dr. Hakim=s amended motion for class certification of the claims against Citizens for violations of the Securities Act. The court considered documentary evidence as well as testimony from Dr. Hakim, officers and directors of the defendants, expert witnesses concerning the securities allegations, and expert witnesses concerning the requirements to certify a class. The court granted Dr. Hakim=s certification motion and issued a twenty-page certification order in which it analyzed class definition, notice to the class, class certification requirements, predominance of common issues of fact and law, and the superiority of adjudicating the securities claims in a class action.

Furthermore, the order contained a detailed ten-page trial plan in which the court stated that it had developed Aan understanding of the issues and questions which will be decided by the jury and/or the Court in the trial of the Class claims.@ The order presented four class-wide issues to be resolved at trial: (1) whether a CICA Policy is a Asecurity@pursuant to the Securities Act (including the question of whether the CICA policies fall within an insurance exception to the Securities Act); (2) whether Citizens sold or offered for sale the CICA policies from Texas; (3) calculation of the statutory remedy pursuant to the Securities Act; and (4) attorneys=fees. The trial plan also discussed the nature of the class claims and defenses, the type of evidence and expert testimony necessary to aid in the jury=s determination, and the proposed jury questions and instructions for the first two issues listed above. Citizens disapproved of the certification

5

order in all respects and brought this appeal, arguing that the district court abused its discretion in granting Dr. Hakim=s motion to certify his claims for class action.

## REQUIREMENTS OF CLASS CERTIFICATION

The class action serves as a mechanism to eliminate or reduce the threat of repetitive litigation, prevent inconsistent resolution of similar cases, and provide a means of redress for individual claims that are too small to make independent actions economically viable. *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452 (Tex. 2000). The principal purpose of the class action device is efficiency and economy of litigation. *Id.* (discussing origins and general design of class action device). Thus, when properly used, a class action saves the court=s and the parties= resources by allowing class-wide issues to be tried in an economical fashion. *Id.* (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1981)).

All class actions must satisfy the following four requirements: (1) numerosityCthe class is so numerous that joinder of all members is impracticable; (2) commonalityCthere are questions of law or fact common to the class; (3) typicalityCthe claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy of representationCthe representative parties will fairly and adequately represent the interests of the entire class. Tex. R. Civ. P. 42(a); *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000). In addition to these prerequisites, class actions must satisfy at least one of four subdivisions of rule 42(b). Here, the district court found that Dr. Hakim established that this class action satisfies rule 42(b)(4), which requires questions of law or fact common to the class to predominate over questions affecting only individual members and that class treatment be superior to other

available methods for the fair and efficient adjudication of the controversy. *See* Tex. R. Civ. P. 42(b)(4); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997); *Bernal*, 22 S.W.3d at 433.

## STANDARD OF REVIEW

A trial court is afforded considerable authority and discretion in defining the class, determining whether to grant or deny class certification, and in decertifying or modifying the class if necessary as the case develops. *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 408 (Tex. 2000). On interlocutory appeal, a trial court=s decision to certify a class is to be reviewed for an abuse of discretion. *Henry Schein, Inc. v. Stromboe*, 46 Tex. Sup. Ct. J. 103, 112, 2002 Tex. LEXIS 178, at *40-41 (Oct. 31, 2002) (citing *Bernal*, 22 S.W.3d at 439). An appellate court must not substitute its judgment for that of the trial court. *Tana Oil & Gas Corp. v. Bates*, 978 S.W.2d 735, 740 (Tex. App.CAustin 1998, no pet.). We will not find an abuse of discretion simply because a trial court determines an issue differently than we would. *Downer v. Aquamarine Operators*, *Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). In determining whether a matter should be litigated as a class action, a trial court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to any guiding principles. *Tana Oil*, 978 S.W.2d at 741. Further, a trial court abuses its discretion if it does not properly apply the law to the undisputed facts, but does not abuse its discretion if it bases its decision on conflicting evidence. *Id*. at 740-41.

In making its class certification decision, the trial court can consider the pleadings and other material in the record, along with the evidence presented at the hearing. *Employers Cas. Co. v. Texas Ass=n of Sch. Bds. Workers=Comp. Self-Ins. Fund*, 886 S.W.2d 470, 474 (Tex. App.CAustin 1994, writ dism=d w.o.j.). In conducting the initial evidentiary review, the trial court must conduct a rigorous analysis to

7

determine whether all prerequisites have been met before ruling on class certification. *Bernal*, 22 S.W.3d at 435. Thus, a Atrial court has discretion to rule on class certification issues, and some of its determinationsClike those based on its assessment of the credibility of witnesses, for exampleCmust be given the benefit of the doubt.@ *Schein*, 46 Tex. Sup. Ct. J. at 112, 2002 Tex. LEXIS 178, at *41. But in reviewing a class certification order, we are prohibited from indulging Aevery presumption in favor of the trial court=s ruling.@ *Id.* The certification order must demonstrate *actual* compliance with the certification requirements because Athe trial court=s exercise of discretion cannot be supported by every presumption that can be made in its favor.@ *Id*.

## ANALYSIS

Citizens appeals the certification order in three issues. First, Citizens challenges the adequacy of the class definition approved by the district court. Second, Citizens contends that the district court failed to conduct Aa proper choice-of-law analysis necessary to determine whether any common issues predominate over individual matters.@ Third, Citizens contends that the district court failed to adequately establish the class certification requirements, including numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. Citizens presents the issues of class definition and choice-of-law as Athreshold issues.@ Indeed, Abefore a reviewing court can consider a putative class=s compliance with the rule 42(a) and (b) class-certification requirements, it must first consider the appropriateness of the certified class definition.@ *Beeson*, 22 S.W.3d at 403. Thus, we will first address Citizens= challenge to the certified class definition and a related challenge to numerosity. However, for

8

reasons we explain below, we need not address Citizens= choice-of-law challenge as a separate Athreshold issue.@  We will then address the remaining class certification requirements.

### *Class Definition and Numerosity*

In *Beeson*, the supreme court ruled that rule 42 implicitly requires that the class members be presently ascertainable by reference to objective criteria.  *Id*. at 403-04.  The class definition Ashould not be defined by criteria that are subjective or that require an analysis of the merits of the case.@ *Id*. at 403.  If the proposed class definition Arests on the paramount liability question,@ then it cannot be objective because when the class definition is framed as a legal conclusion, Athe trial court has no way of ascertaining whether a given person is a member of the class until a determination of ultimate liability as to that person is made.@ *Id.* at 404.  Such a definition creates a Afail-safe class@ that would only be bound by a judgment favorable to the plaintiffs, not a class also bound by a judgment favorable to defendants.  *Id*.  Members of a class who did not prevail on the merits would not be a class and thus would not be precluded from bringing individual claims.  A fail-safe class is impermissible because of its failure to bind class members regardless of the outcome.

The certification order in this case defined the class as follows:

> The Class consists of all persons, who, during the Class Period (August 6, 1996 through the date the Class is certified): (1) purchased a CICA Policy and executed an assignment to a trust for the purchase of Citizens, Inc. stock, or (2) paid any money that, pursuant to a CICA Policy and assignment to a trust, was for the purchase of Citizens, Inc. stock, or (3) were entitled to any cash benefits from a CICA Policy that, pursuant to a CICA Policy and assignment to a trust, were for the purchase of Citizens, Inc. stock.  Specifically excluded from the Class are all persons who, within the time period established by the judgment, do

9

not surrender their CICA Policies and take the other actions required to obtain the relief awarded by the Court.

Citizens specifically complains that the last sentence of the class definition causes it to run afoul of *Beeson*, arguing that Athe exclusionary language creates a future contingency, dependent on the future state of mind of each class member.@ According to Citizens, this future contingency creates a fail-safe class by being dependent upon a judgment in favor of the plaintiffs. We disagree.

The trial court in *Beeson* defined the class as gas producers Awhose natural gas was taken by the defendant in quantities less than their ratable proportions.@ *Id*. The supreme court held the trial court abused its discretion because the certified definition was the legal issue of whether Intratex had taken nonratably from the producers. *Id*. Similarly, in *Ford Motor Co. v. Sheldon*, the supreme court rejected a class defined as those Awho suffered past and/or future damage as a result of peeling or flaking paint on these vehicles caused by a defective paint process@ or Awho paid Ford or a Ford dealership for a paint repair to their vehicle to repair peeling or flaking paint caused by a defective paint process.@ 22 S.W.3d at 448. In *Sheldon*, if the paint process was not defective, then no class would exist. *Id*. at 454. Thus, Aincluding the defective paint process theory as an element of the class definition impermissibly required a determination of the merits before the court could ensure the existence of a class.@ *Charlie Thomas Courtesy Leasing v. Taylor*, 44 S.W.3d 684, 688 (Tex. App.CHouston [14th Dist.] 2001, no pet.) (discussing *Beeson*, 22 S.W.3d at 404).

Unlike the class definitions in *Beeson* and *Sheldon*, the class definition at issue here is not prohibited because the class members are Apresently ascertainable by reference to objective criteria.@

10

*Beeson*, 22 S.W.3d at 403.  This class includes any purchaser of CICA policies who assigned dividends and other benefits to the offshore trusts, and as the district court explained in the certification order, this fact can be Aobjectively ascertained from the records of the Defendants.@ The class definition does not rest on whether the CICA policies qualify as securities or whether the policies were in fact sold or offered for sale from Texas; therefore, no resolution of the merits is required before class membership can be determined, and the definition does not rest upon the paramount liability question.  *Id*. at 404.

Nor does the definition create a fail-safe class whereby the class members would be bound *only* by a judgment favorable to the plaintiffs.  The exclusionary language of which Citizens complains was specifically added to the definition to address the district court=s concern about providing Anotice to the Class about the issue of non-insurability that might result from a Class member surrendering his or her CICA Policy to implement the statutory rescission remedy provided by the [Securities Act].@ The certification order further explains that Athe exclusionary language . . . allows individual Class members, *in the event the Class=claims are successful*, to decide they would rather keep their CICA Policies and not take the steps required to obtain Court-ordered relief.@ (Emphasis added.)  This is not a fail-safe class because, in the event of a judgment for Citizens, the last sentence of the class definition will not operate to exclude anyone from the class, but only from receiving the statutory remedy of rescission; all class members will be bound by a favorable or unfavorable judgment.  *See id*.  Although the class members who retain life insurance coverage will not be granted rescission, they will be precluded from later asserting an individual action against Citizens based on article 581-33A of the Securities Act if Citizens prevails.

11

Citizens argues that the exclusionary language of the class definition provides the putative class members a second, post-judgment opportunity to eliminate themselves as members of the class. According to Citizens, Athis future decision by putative class members is dependent upon their future state of mind,@ and therefore Aeven in the event that [Dr. Hakim] should prevail on the merits, there may be no class whatsoever.@ We believe that Citizens misinterprets the effect of the class definition=s last sentence, which likely results from their reading of the phrase Aexcluded from *the Class*.@ (Emphasis added.) But this language does only what it says: should Dr. Hakim prevail on the merits, the class members will forgo the statutory remedy and retain life insurance coverage unless they affirmatively take the steps prescribed by the district court. Having already received notice and chosen to remain in the class, the class members will not be allowed a second opportunity to opt out of the class or the judgment.[6] To remove any doubt, and for the sake of clarity, we will modify the last sentence of the class definition by substituting the word Aremedy@ in place of the word AClass.@[7] *Cf. Beeson*, 22 S.W.3d at 406-08 (noting that appellate courts can redefine

---

[6] According to the certification order, the notice to the class shall include:

$ a description of the nature of the class action;
$ a description of the claims of the Class Plaintiff, the measure of damages if the Class claims succeed, and the defenses of the Defendants;
$ a full explanation of the non-insurability issue;
$ description of the rights of the Class members to opt out of the Class and the procedure for opting out of the Class; and
$ a statement regarding the attorneys= fees that will be sought by Class counsel.

This notice satisfies the class notice requirements, *see* Tex. R. Civ. P. 42(c)(2), and makes clear that if the class member has not opted out by a specified date, then he or she is bound by whatever *judgment* the district court renders.

[7] The last sentence of the class definition will therefore read as follows: ASpecifically excluded from

12

class in some circumstances, but refusing to do so after determining that Athe present class definition must be abandoned because it is fundamentally flawed@). Because the class definition is not fundamentally flawed, we see no reason to remand to the district court to completely redefine the class.

Although Citizens challenges numerosity separately as part of its third issue, Citizens does not specifically challenge the numerosity findings of the district court. Rather, Citizens merely urges an argument based on the one it made against class definition. According to Citizens, if Dr. Hakim prevails at trial on the merits, Aand no CICA policyholder surrenders their life insurance policies, the class size would undoubtedly fail the numerosity requirement of Rule 42.@ This argument is without merit because, as we previously explained, the class members who do not opt out by the notice deadline will be bound by the *judgment*. Whether the class members take the action necessary to receive the statutory rescission remedy or damages has no bearing on the numerosity analysis. We therefore hold that the district court did not abuse its discretion in defining the class and accordingly overrule Citizens=first issue and its third issue to the extent that Citizens challenges the district court=s numerosity finding.

### *Choice of Law, Commonality, Predominance of Common Issues*

Citizens dedicates its entire second issue to complaining that the district court abused its discretion by failing to engage in an adequate choice-of-law analysis. As part of its third issue, Citizens challenges commonality, but restricts this challenge to arguing that the district court=s finding of commonality

---

the remedy are all persons who, within the time period established by the judgment, do not surrender their CICA Policies and take the other actions required to obtain the relief awarded by the Court.@

rests upon the erroneous conclusion that Texas law applies to the sale of foreign life insurance policies occurring in fifty jurisdictions across the globe. Furthermore, in its challenge to the district court=s rule 42(b)(4) analysis, also part of its third issue, Citizens contends that the absence of any meaningful choice-of-law analysis renders impossible any reliable determination of whether common issues predominate. Thus, we will address choice-of-law in the context of the commonality and predominance requirements. We will also dispose of Citizens= challenges to commonality and predominance in a single discussion because the Acommonality requirement is subsumed under the more stringent Rule 42(b)(4) requirement that common questions of law or fact predominate over questions involving individual members.@ *E & V Slack, Inc. v. Shell Oil Co.*, 969 S.W.2d 565, 569 (Tex. App.CAustin 1998, no pet.) (citing *Amchem*, 521 U.S. at 626). The predominance test is used to determine whether common issues predominate over individual issues, and inquires whether common or individual issues will be the object of most of the efforts of the litigants and the court. *Bernal*, 22 S.W.3d at 433-34. A non-exhaustive list of factors relevant to the predominance inquiry is the interest of members of the class in individually controlling the prosecution or defense of their particular actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability of concentrating the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action. Tex. R. Civ. P. 42(b)(4); *Bernal*, 22 S.W.3d at 433-34.

Rather than specifically addressing the predominance of the common questions identified by the district court in its order, Citizens contends that choice-of-law is a barrier to commonality and the predominance of common issues because of potential differences in the applicable securities laws of foreign

14

jurisdictions. According to Citizens, the district court abused its discretion by failing to conduct a Amost significant relationship@ analysis pursuant to section 6(2) of the Restatement (Second) of Conflict of Laws and thereby applying the securities laws of the jurisdictions where the class members reside. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000); *Restatement (Second) of Conflict of Laws* '' 6, 188 (1971). However, Citizens overlooks section 6(1) of the Restatement, which directs the application of Texas law to this case and therefore renders the Amost significant relationship@ analysis inapplicable.

Section 6 of the Restatement provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) *When there is no such directive*, the factors relevant to the choice of the applicable rule of law include . . . .

*Restatement (Second) of Conflict of Laws* ' 6 (emphasis added). If the Texas Legislature intends for a statute to be applied to out-of-state facts, the courts will so apply it unless constitutional limitations forbid it. *Id.* ' 6(1) cmt. b. Application to out-of-state facts is permissible even when the local law of another state would be applicable under usual choice-of-law principles. *Id.* AIf construction of the Texas statute justifies the application of Texas rather than [foreign] law, and that does not offend the constitution, it is not necessary to engage in the choice of law analysis based on the significant relationships set out in [section 6(2) of the Restatement].@ *Busse v. Pacific Cattle Feeding Fund*, 896 S.W.2d 807, 814 (Tex.

15

App.CTexarkana 1995, writ denied) (citing *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434 (Tex. 1982)).[8]

At the certification hearing, the district court heard extensive argument on whether the Securities Act contains a statutory directive for its application to claims asserted by non-residents. For example, Dr. Hakim argued to the court that section 33A is a legislative choice-of-law rule directing its application to this case if Citizens hasAsold or offered for sale a security from this state without registering as a securities dealer. We agree. A plain reading of the statute reveals that the legislature intended to prohibit an unregistered seller of securities from selling in this state, even when the purchasers are non-residents. *See* Tex. Rev. Civ. Stat. Ann. arts. 581-12, -33A(1) (West Supp. 2003). Also, the Securities Board has promulgated a specific regulation entitledASale of Securities to Nonresidents,@which states in part thatA[a]n issuer or selling agent who makes an offer or sale *from* Texas, by any means . . . is a dealer and must comply with the dealer registration requirements of the Securities Act.@ 7 Tex. Admin. Code ' 139.7 (2002) (emphasis added). Finally, case law makes clear that the Securities Act applies to sales from Texas to non-residents by specifying that it applies when certain actions take place within Texas. *See, e.g.*, *Enntex Oil & Gas Co. v. State*, 560 S.W.2d 494, 497 (Tex. Civ. App.CTexarkana 1977, writ ref=d n.r.e.); *Rio Grande Oil Co. v. State*, 539 S.W.2d 917, 921-22 (Tex. Civ. App.CHouston [1st Dist.]

---

[8] Citizens does not make the argument that constitutional limitations forbid the application of the Securities Act to the facts of this case.

16

1976, writ ref=d n.r.e.) (concluding that the Securities Act applies to sales made from Texas to residents of other states).

Citizens argues that Athe [Securities Act] was never intended to apply, even by the state agency charged with its enforcement, to the sale of alleged securities occurring in foreign jurisdictions.@ However, the class claims do not allege sales occurring *in* foreign jurisdictions, but rather sales occurring in *or from* Texas. At trialCgiven that one of the common questions isAwhether the CICA Policies were sold from Texas@CDr. Hakim will carry the burden of proving to the factfinder that Citizens=activities in Texas relating to the CICA policies were critical linksAin the chain of the selling process@and therefore constituted an offer or sale of securities from Texas.**9** *Rio Grande Oil*, 539 S.W.2d at 922. Citizens seeks to employ the Amost significant relationship@analysis to preemptively reach the merits and show that it did not offer or sell securities from Texas. But as counsel for Dr. Hakim explained to the district court at the certification hearing, there is no choice-of-law issue in this caseAexcept for the same substantive issue on which liability depends.@ We conclude that the district court did not abuse its discretion by failing to engage in a Amost significant relationship@ analysis.**10**

---

**9** Citizens uses the same process in each country to obtain policyholders for the CICA policies. Citizens does not sell the CICA policies directly to the policyholders, but rather applications for the CICA policies are obtained by CICA=s agents in the countries where the policyholders reside. Dr. Hakim argues that there is nonetheless enough evidence in the record to show that Citizens sells the CICA policies from Texas. For example, Citizens partially develops a sales training manual in Austin, and the underwriting takes place in Austin.

**10** In its reply brief, Citizens also contends that the Securities Act cannot apply to the class claims because it was never intended to apply to the sale of foreign life insurance policies. *See* Tex. Rev. Civ. Stat. Ann. art. 581-4A (West Supp. 2003); Tex. Ins. Code Ann. art. 3.42(a) (West Supp. 2003). Citizens attempts to conflate this argument with its choice-of-law issue. However, Citizens made this exact argument

17

As part of its third issue, Citizens challenges the district court=s predominance finding by also arguing that, because all the claims except for the securities claims have been abandoned by the class, Dr. Hakim improperly seeks to resolve a single issue by way of the class action rather than the entire controversy. For support, Citizens cites to the statement in *Bernal* that Aa judgment in favor of the class members should decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim.@ 22 S.W.3d at 434 (quoting *Life Ins. Co. of the Southwest v. Brister*, 722 S.W.2d 764, 772 (Tex. App.CFort Worth 1986, no writ)) (internal quotations omitted).

---

to the district court in its motion for summary judgment, which the court denied. Whether the CICA policies are securities as defined by the Securities Act (including the question of whether the CICA policies fall within an insurance exception to the Securities Act) is another element of the class claims and has been identified by the district court as a common question for the fact finder to decide with the aid of expert testimony. Thus, we need not address it here.

Citizens misapplies the language quoted by the supreme court in *Bernal*. In *Bernal*, the causation and damages elements of the cause of action were unique to each class member and therefore a single judgment could not settle the entire controversy. *Id*. at 436-37. Here, whether Citizens violated the Securities Act=s registration requirements is not a single issue or element of a controversy, but rather a complete cause of action that constitutes an Aentire controversy@ unto itself. This case is more analogous to *Compaq Computer Corp. v. LaPray*, where the court of appeals concluded that, although the class plaintiffs disclaimed consequential damages and abandoned various claims, the common interests of absent class members had not been sacrificed. 79 S.W.3d 779, 793 (Tex. App.CBeaumont 2002, no pet.). AThe fact that defendants engaged in a course of activity giving rise to a variety of claims, only some of which are suitable for class treatment, does not mean certification is inappropriate.@ *Id.* (citing *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 610 (Tex. App.CTexarkana 1995, writ dism=d)). AClients who have claims not raised in this class action because the claims are unsuitable for class treatment can bring those claims on an individual basis, and *res judicata* will not bar those claims because absent class members had no opportunity to litigate those issues in this lawsuit.@ *Sullivan v. Chase Inv. Servs. of Boston, Inc.*, 79 F.R.D. 246, 265 (N.D. Cal. 1978).

Finally, Citizens challenges predominance by arguing that, should the class claims succeed, individual issues will predominate over the question of whether the class is entitled to recover attorneys=fees pursuant to the Securities Act. The Securities Act provides that A[o]n rescission or as a part of damages, a buyer or a seller may also recover reasonable attorney=s fees if the court finds that the recovery would be equitable in the circumstances.@ Tex. Rev. Civ. Stat. Ann. art. 581-33D(7) (West Supp. 2003). Citizens

directs us to the commentary of that provision, which recommends that a court consider circumstances such as the conduct of the parties in making the transaction; the conduct of both parties in the lawsuit; whether the defendant benefitted from the violation; and fiduciary relationships. Tex. Rev. Civ. Stat. Ann. art. 581-33D(7) cmt. (West Supp. 2003). According to Citizens, the district court abused its discretion because its certification order fails to explain howCas Citizens puts itCthe Aconduct of each party to each of the underlying transactions@ can be efficiently determined in a single trial to a single jury. *See Bernal*, 22 S.W.3d at 434 (AIf, after common issues are resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate.@).

Citizens=argument focuses too literally on the commentary, which we regard as being only persuasive. The trial court need not consider *all* the circumstances listed in the commentary; rather, we read the commentary to suggest that the court consider all the circumstances that, in its sound discretion, it deems relevant to violations of the registration requirements. Thus, we note that article 581-33D(7) of the Securities Act applies to the whole of section 33, including 33A(2), which creates liability for selling or offering securities by means of an untrue statement or the omission of a material fact. *See* Tex. Rev. Civ. Stat. Ann. art. 581-33A(2) (West Supp. 2003). The Acircumstances@ that might make the recovery of attorneys=fees Aequitable@ under this cause of action could involve individualized issues of misrepresentation, reliance, or the subjective knowledge of the policyholders. But here, because the heart of the dispute turns only on whether the jury decides that the CICA policies constitute securities and whether they were sold from Texas, Athe conduct of each party to each of the underlying transactions@ appears altogether

irrelevant.[11]  Furthermore, the jury will not be presented with an Aoverwhelming task@ because the court

rather than the jury will consider the circumstances that would make recovery of attorneys= fees equitable.

*See id*. art. 581-33D(7); *cf. Bernal*, 22 S.W.3d at 434.

We hold that the district court did not abuse its discretion in determining that the class claims

asserted by Dr. Hakim demonstrate commonality and that common issues of law and fact predominate over

any individual issues.  Accordingly, we overrule Citizens= second issue (concerning choice of law) as well as

Citizens= third issue to the extent that it challenges commonality and predominance.

***Typicality***

Typicality requires that class representatives possess the same interests and suffer the same

injury as the unnamed or absent class members.  *State Farm Mut. Auto Ins. Co v. Lopez*, 45 S.W.3d

182, 191 (Tex. App.CCorpus Christi 2001, pet. dism=d w.o.j.).  To be typical, class representatives=

claims need not be identical, but must arise from the same event or course of conduct giving rise to the

claims of other class members and must also be based on the same legal theories.  *Weatherly v. Deloitte &*

*Touche*, 905 S.W.2d 642, 653 (Tex. App.CHouston [14th Dist.] 1995, writ dism=d w.o.j.).  Here, the

district court concluded that typicality had been satisfied with regard to the securities claims, and

---

[11]  We note that Citizens would urge the district court to consider, for purposes of determining attorneys= fees, whether the terms of the CICA policies were carefully explained to the policyholders, whether the policyholders diligently attempted to understand the policies, and whether the policyholders purchased the policy primarily for insurance or as an investment.

furthermore that there Aare no defenses asserted by the Defendants which make Dr. Hakim atypical of the Class.@

Citizens first contends that Dr. Hakim is not typical of the class because his securities claim is barred by the statute of limitations, which prohibits a person from suing under section 33A(1)Amore than three years after the sale.@ Tex. Rev. Civ. Stat. Ann. art. 581-33(H) (West Supp. 2003). We are not persuaded because the Aargument that the presence of even an arguable defense peculiar to different class members destroys the entire class, is incorrect.@ *Adams v. Reagan*, 791 S.W.2d 284, 290 (Tex. App.CFort Worth 1990, no writ); *see also Sun Coast Res., Inc. v. Cooper*, 967 S.W.2d 525, 537 (Tex. App.CHouston [1st Dist.] 1998, pet. dism=d w.o.j.) (rejecting contention that defenses of release and accord and satisfaction applicable to class members other than class plaintiff necessarily destroys typicality); *Dresser Indus., Inc. v. Snell*, 847 S.W.2d 367, 373 (Tex. App.CEl Paso 1993, no writ) (holding that, although varying defenses existed as to different class members, including a limitations defense, typicality was not destroyed). As in these cases, because the class alleges an Aoverall scheme@on the part of Citizens which must be defended by arguing that the CICA policies do not qualify as securities and were not sold or offered for sale from Texas, we conclude that Dr. Hakim=s securities claims are typical of the class he seeks to represent. *See Dresser Indus.*, 847 S.W.2d at 373.

Second, Citizens argues that Dr. Hakim is not typical of the class because he purchased his CICA policies without relying on the Citizens, Inc. website, which repeatedly characterized the CICA package as an Ainvestment.@ However, because reliance is not an element of a cause of action based on article 581-33A(1) of the Securities Act, Citizens=argument has no relevance to the typicality inquiry. *See*

22

Tex. Rev. Civ. Stat. Ann. art. 581-33A(1). Finally, Citizens challenges typicality by arguing that Dr. Hakim=s CICA policies do not contain arbitration clauses, unlike other CICA policies purchased by some of the putative class members. We reject this argument because the alleged distinction does not destroy the Anexus@ that exists between Dr. Hakim=s injuries and those of the other class members. *Dresser Indus.*, 847 S.W.2d at 372. We therefore hold that the district court did not abuse its discretion in determining that the typicality requirement had been met.

### *Adequacy of Representation*

Two components make up the requirement of fair and adequate representation: (1) an absence of antagonism between the class representative and the class members; and (2) an assurance that the class representative will vigorously prosecute the class members= claims and defenses. *See Forsyth v. Lake LBJ Inv. Corp.*, 903 S.W.2d 146, 150 (Tex. App.CAustin 1995, writ dism=d w.o.j.). The adequacy of representation is a fact question that the trial court determines based on the individual circumstances of each case, and is addressed to the trial court=s discretion. *Manning*, 914 S.W.2d at 614. A number of factors affect this determination, including adequacy of counsel; potential conflicts of interest; the personal integrity of the plaintiffs; the representatives= familiarity with the litigation and their belief in the legitimacy of the grievance; the manageability of the class considering geographical limitations; and the ability to finance the class action. *Forsyth*, 903 S.W.2d at 150.

We first examine whether any antagonism exists between Dr. Hakim and the class members. A conflict that goes to the very subject matter of the litigation will defeat a party=s claim of representative status. *Id*. at 151. Class certification may be denied if there is a possibility of significant

23

disagreement within the proposed class. *Id.* (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 485-86 (5th Cir. 1982)). According to Citizens, an inter-class antagonism exists here because Dr. Hakim seeks statutory rescission of the CICA policies, without regard to some class members= potential desire to keep their CICA policies and maintain life insurance coverage. Citizens points to testimony by Dr. Hakim, where he stated that he did not believe in insurance and purchased his CICA policy merely as an investment. However, Citizens has presented no evidence that any class members oppose the remedy sought by Dr. Hakim. Nor does Citizens offer evidence on how Dr. Hakim=s decision to have his CICA Policy rescindedCwhich would require affirmative steps on his part and on the part of any class member seeking rescissionCwould prevent other class members from remaining insured. Indeed, the district court=s definition of the class, as modified, defeats Citizens= claim. Thus, because the possibility of an inter-class antagonism in this case is merely speculative, the cases relied on by Citizens are easily distinguished. In *Forsyth*, this Court treated the fact that at least twelve class members intervened and opposed the class-proponents= objectives as evidence of actual inter-class antagonism. *Id.* at 151-52. In *E & V Slack*, one putative class member testified that he opposed the remedy sought by the representatives because it would mean dismantling a program that he and other class members still benefitted from. 969 S.W.2d at 568-69. In contrast, here the investment scheme of the CICA policies might be terminated, but those primarily interested in maintaining life insurance coverage can choose to reject that remedy and therefore are not antagonistic to Dr. Hakim=s objectives.[12]

---

[12] As we discussed earlier in this opinion, the certification order explains that class members who would prefer to maintain life insurance coverage could simply opt out after receiving notice or permissibly choose to forgo the remedy while still being bound by the judgment. Nonetheless, Citizens attacks the

certification order for barely mentioning whether a conflict of interest exists between Dr. Hakim and the class.  To the contrary, the district court=s order expressed concern over ensuring that certain class members retain their life insurance coverage if they so desire, and states that such concern is the reason for the last sentence of the class definition.  Clearly, the district court directed serious attention to the issue of a potential conflict of interest.

Citizens also argues that the district court abused its discretion by finding that Dr. Hakim would vigorously prosecute the claims and defenses of the class members. According to Citizens, Dr. Hakim lacks knowledge concerning the details of the class action and passively acquiesced to dass counsel=s decision to seek class certification only for the Securities Act claims. However, it is not necessary that Dr. Hakim, as class representative, fully comprehend the legal terms and pleadings. *See LaPray*, 79 S.W.3d at 792-93. He must vigorously prosecute the claims *through his attorneys*, which he can do by providing personal knowledge of the facts underlying the complaint. *See id*. (citing *Forsyth*, 903 S.W.2d at 152; *Weatherly*, 905 S.W.2d at 652). According to the certification order, Dr. Hakim had twice traveled to Texas to attend certification hearings; he demonstrated the intelligence and personal integrity necessary to grasp the nature of the proceedings and the issues; and he demonstrated familiarity with the class claims and a willingness to vigorously prosecute those claims. The evidence supports the district court=s findings. Furthermore, Dr. Hakim cannot be rendered an inadequate class representative for abandoning those claims not appropriate for class action treatment because, as we previously discussed, there is nothing impermissible about that strategy. *See id*. at 793. Because the district court did not abuse its discretion, we overrule Citizens= third issue to the extent that it challenges adequacy.

### *Superiority*

Finally, Citizens disputes the district court=s finding of superiority. A class action is the superior method of adjudication when the benefits of class-wide resolution of common issues outweigh any difficulties that may arise in the management of the class. *Tana Oil*, 978 S.W.2d at 743. The trial court should consider alternative procedures for disposing of the dispute and compare these to the judicial

resources and potential prejudice to absent class members involved in pursuing the class action. *Id*. The trial court may consider whether: (1) class members have an interest in resolving the common issues by class action; (2) class members will benefit from discovery already commenced; and (3) the court has invested time and effort in familiarizing itself with the issues in dispute. *Id*. Here, class members have an interest in obtaining rescission of securities that are completely unregulated. To the extent that the rescission of individual CICA policies is too small to justify the expense of traveling to the United States to engage in expensive litigation, the class action mechanism provides for an efficient means to resolve the securities claims. As the district court stated in the certification order: A[I]t is highly desirable to concentrate the litigation of the identical claims of the members of the Class for violations of the [Securities Act] in this forum . . . because the Court has already expended substantial time and effort on the Class= securities claims and, as a result, is fully informed about the nature of the claims and defenses.@ We agree. Repeated litigation over whether the CICA policies qualify as securities and whether they were sold from Texas would be a waste of judicial resources.

Citizens argues that, notwithstanding these findings, the fact that individual suits are being pursued by every named plaintiff other than Dr. Hakim proves that pursuing the claims under the Securities Act as a class action is not the superior method of adjudication. However, five of the nine individual plaintiffs are not asserting securities claims and are not class members because they sued only to recover death benefits. The other four plaintiffs bring their individual claims only because they were combined with the death claimants= and the class claims. Thus, four individuals out of a potential class of over twenty-five thousand have filed claims other than the class=s securities claims. As Dr. Hakim points out, this is Ahardly

27

compelling evidence that Class members have a significant interest in controlling the prosecution of their claims; in fact, it proves the opposite.@ Furthermore, because the securities claims are not predominated by individual issues such as reliance and damages, Dr. Hakim has shown that a class action is both more fair and efficient in these circumstances. *Cf. Schein*, 46 Tex. Sup. Ct. J. at 119, 2002 Tex. LEXIS 178, at *66 (holding that superiority requirement not satisfied where plaintiffs Afailed to show that a class action is either more fair or more efficient@ under the circumstances). The district court did not abuse its discretion; therefore, we overrule Citizens= challenge to superiority in its third issue.

## CONCLUSION

In conducting the initial evidentiary review, the trial court must conduct a rigorous analysis to determine whether all prerequisites have been met before ruling on class certification. *Bernal*, 22 S.W.3d at 435. Our review of the record supports our conclusion that the district court did not abuse its discretion in certifying the class. The district court conducted a thorough certification hearing in which it went beyond the parties= pleadings in order to examine the claims, defenses, relevant facts, and applicable substantive law in order to make a reasoned determination of the certification issues. At the certification hearing, both sides presented a large quantity of documentary evidence and expert witnesses. The district court=s decision to certify the class is explained in an extensive, lengthy certification order that contains a detailed trial plan. This demonstrates that the district court conducted a rigorous review of the information presented, after which it determined that the case met the supreme court=s test of actual, rather than presumed, compliance with the rule 42 certification requirements. *Id*.; *Schein*, 46 Tex. Sup. Ct. J. at 112, 2002 Tex. LEXIS 178, at *41.

28

We conclude that the class definition presently and precisely ascertains the class members, although we instruct the district court to modify the class definition in accordance with this opinion. We conclude that the district court was not required to engage in a Amost significant relationship@choice-of-law analysis. Furthermore, we conclude that the district court did not abuse its discretion by finding that all class certification requirements had been met. We therefore overrule Citizens=issues on appeal and accordingly affirm the district court=s order as modified.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Modified and, as Modified, Affirmed

Filed:   April 24, 2003

29